HOCKADAY *v.* WARMACK.

Opinion delivered January 3, 1916.

1. GARNISHMENT—DUTY OF GARNISHEE TO HOLD FUNDS.—A garnishee, after service of the writ upon him, must retain possession of all property and effects of the principal debtor in his hands, and if he fails to do so, he is liable for the value of the same to the plaintiff in the principal action.

2. GARNISHMENT—PAYMENT OF MONEY DUE—DUTY OF GARNISHEE—CONTRACT WITH DEFENDANT.—Under a trade of land, A. was to execute a certain note and mortgage to B., which was to be due January 1, 1915. He was served with process in garnishment proceedings before he executed the note. *Held*, under the garnishment proceedings A. could not be made to pay what he owed to B. until it was due, and the service of the writ on him was no legal justification for his failure to execute the note and mortgage in accordance with his contract with B.

3. DEBT—CONTRACT FOR PURCHASE PRICE OF LAND—INTEREST.—Where, under the facts set out above, A. failed to pay over the money due on the contract, he will be liable for interest on the same from the date of the contract until payment was made.

4. CONTRACT OF SALE—CONSIDERATION—ORAL EVIDENCE.—A contract of sale recited, "I hereby sell to E. H. the H. Hotel for fifteen thousand dollars, $15,000.00, paid with note due January 1, 1915, at 8 per cent interest from date to be secured by mortgage on said H. Hotel." Held, oral evidence was admissible to show that the amount of alleged shortage of personal property in the said hotel, was considered and included as a part of the consideration of $15,000.00 which the buyer was to pay the seller for the hotel.

5. CONTRACTS—EXCHANGE OF PROPERTY—PAYMENT OF TAXES—IMPROVEMENT TAXES.—A contract for the exchange of property provided that appellee was "to pay all taxes for 1913" on the lands transferred by him to the appellant, held, under the evidence that the word "taxes" meant all taxes, including local assessments.

Appeal from Miller Chancery Court; *Jas. D. Shaver, Chancellor*; affirmed.

STATEMENT BY THE COURT.

On November 17, 1913, appellant exchanged with appellee a hotel in Kingfisher, Oklahoma, for a plantation containing 883 acres of land and certain personal property in Miller County, Arkansas. There was a mortgage on the land for $18,000, which, with interest, amounted to over nineteen thousand dollars, which the appellant assumed. Each party was to pay the taxes for the year 1913 on the property received by them respectively in the exchange.

On December 22, 1913, appellee sold the hotel, which he had received in exchange for his land back to appellant for $15,000, for which appellant was to execute his note due January 1, 1915, bearing interest at 8 per cent. from date until paid, and to be secured by a mortgage on the hotel.

On December 23, 1913, before the mortgage and note were executed, appellant was garnisheed in a suit brought by one Spearman against the appellee for the sum of $2,500. Appellant also learned that other liens existed against certain of the property for which he had traded. Appellant declined to execute the note and mortgage for the purchase of the hotel, but, instead, he sent to the State National Bank, at Texarkana, his check for $5,000 and his note for $10,000, due January 1, 1915, and wrote

a letter to the bank specifying certain conditions under which the bank should deliver to the appellee the $5,000, or any part of it, and also under which it should deliver the $10,000 note. Appellee demanded that appellant carry out his agreement as to the purchase of the hotel by executing his note and mortgage as provided by the written contract between them.

Appellant, after taking possession of the plantation, claimed that he discovered in February, 1914, that there was a large shortage in the personal property he had bought of appellee.

On the 30th of June, 1914, appellee and Spearman adjusted the garnishment proceedings between them, and appellee then requested appellant to carry out his contract, but appellant still refused. After some negotiations toward an adjustment of the differences between them, the parties met on June 30, 1914, and entered into a written agreement whereby appellant was to pay to appellee the sum of $12,000 and appellant was to retain in his hands the sum of $3,000, to indemnify him against certain probable losses therein specified, and appellee was to institute suit to determine whether or not appellant was due him interest on the $5,000 at 8 per cent. from December 22, 1913, until June 30, 1914, and whether or not under the original contract of exchange of properties it was incumbent on the appellee to pay the levee taxes, and to settle other differences between the parties, but it was stipulated that nothing contained in the agreement entered into on that day should be construed as annulling, setting aside or affecting any contract of settlement theretofore entered into by the parties.

Accordingly appellee instituted this suit, and the issues raised, as shown by the pleadings, were substantially as follows:

Appellee claimed that appellant was indebted to him for interest on $5,000 at 8 per cent. per annum from December 22, 1913, until June 30, 1914. Appellant denied that this interest was due, setting up that the $5,000, remainder of the purchase money, on which appellee

claimed interest, was deposited in the bank for the special benefit of appellee, to which he tacitly agreed, and that by reason of the levy of the garnishment against him (appellant) he was precluded from complying with the letter of his agreement to execute his note and mortgage; that appellant deposited $5,000 January 20, 1914, after appellee had written to him that he needed the money; that appellee partially complied with the conditions upon which the deposit was made by surrendering to the bank what he claimed to be a memorandum of sale, but appellee never repudiated the deposit until June 30, 1914, the date of the final agreement as to the settlement, and appellant therefore claimed that the $5,000 was subject to the appellee's control, and that appellant was therefore not chargeable with interest thereon.

Appellee further contended that appellant was indebted to him in the sum of $250, the earnings of the hotel property from the date of the exchange of the properties, November 17, 1913, until the date when appellee sold the hotel to appellant, towit, December 22, 1913. Appellant denied that there were any earnings from the hotel during that period.

Appellant set up, by way of cross-complaint, that appellee was indebted to him in the sum of $488 for levee taxes for the year 1913, which were a lien on the land and which appellant had to pay to prevent the sale of the land for such taxes. He contended also that there was a shortage in the personal property amounting in value to $2,729.40, which he claimed was included in their agreement to exchange properties. Appellee denied that under the agreement he was to pay levee taxes for 1913, and also denied that he was indebted to the appellant in the sum claimed as shortage in personal property, and contended that whatever shortage there was in the personal property contemplated by their original agreement for exchange of properties was included and settled and went in as part of the consideration for the sale of the hotel property by the appellee back to the appellant on December 22, 1913.

The court found that the appellee should recover of the appellant interest on the sum of $5,000 at 8 per cent. per annum from December 22, 1913, until June 30, 1914, amounting to the sum of $208.89, and interest on that sum from June 30, 1914, at 8 per cent. per annum. The court further found that appellee was not entitled to recover earnings on account of the operation of the hotel property.

The court further found that the appellant was not entitled to recover for any alleged shortage of personal property under the contract of November 17, 1913, but that he was entitled to recover the sum of $488 on account of levee tax on the land, with interest at 6 per cent. per annum from August 31, 1914, until paid.

On these findings the court entered a decree in favor of the appellee against the appellant in the sum of $208.89, with interest from June 30, 1914, until paid, at the rate of 8 per cent. per annum, and entered a decree in favor of the appellant against the appellee for the sum of $488, with interest from August 31, 1914, until paid, at 6 per cent. per annum.

The appellant appealed and the appellee entered a cross-appeal.

The facts as set forth in the first part of the statement are undisputed, and such other facts as may be necessary, bearing on the issues, will be stated in the opinion.

*Webber & Webber,* for appellant.

The chancellor found for appellant as to the hotel earnings, and the levee taxes, and appellee not having appealed, these items are eliminated, leaving only two questions for this court:

1. Is appellant liable for interest on the $5,000 deposited in the bank by him?

To have executed and delivered to appellee the note and mortgage would have rendered appellant liable to the garnishment for his entire debt. 40 Ark. 531. A garnishee is not liable for interest on funds impounded by a

writ of garnishment. 20 Cyc. 1067-8. To charge interest on the deposit would be inequitable.

2. Is appellant entitled to recover for the shortage of personal property which appellee sold him but failed to deliver?

Appellee guaranteed the property was on the plantation and it was not. It was part of the consideration of the sale. The chancellor overlooked the fact that this shortage was not covered by and included in the trade for a re-sale of the hotel, as it was a physical impossibility for appellant to have known of these shortages at the time, December 22, 1913. The claim is too unreasonable to believe. Appellee can not dispute the shortage, which he knew of. But the re-sale was in writing, which can not be varied by parol, or added to. This was decided by the chancellor on the authority of 108 Ark. 430, but this matter is ruled by 109 Ark. 82, where the distinction clearly appears.

The re-sale was a separate and distinct contract as to the hotel and the consideration is stated distinctly. The memorandum was merged in the deed executed and no attack is made on it for fraud or mistake. 21 Ark. 440; 33 *Id.* 150; 10 *Id.* 9. This is a memorandum of a sale of land in writing. It was definite, complete, certain and unambiguous and required no explanation. 86 Ark. 162; 95 *Id.* 131; 100 *Id.* 360; 17 Cyc. 610. To add to the consideration would be to vary its terms.

3. Evidence of what occurred in an effort to compromise is not admissible. 85 Ark. 337; 1 Greenl. on Ev. (16 ed.), section 192. If admissible at all the whole admission is to be taken together; *all* the party said at the time in connection with the admission should be considered. 24 Ark. 499-507; 1 Gr. on Ev., Sections 201-2; 160 Mass. 486; 16 Cyc. 946, *et seq.*

Appellant should be relieved from the interest, $208.89, and allowed the shortage, $2,729.40.

*D. B. Sain,* for appellee.

1. *All* differences with reference to claim for shortage were settled when the re-sale of the hotel was made. The garnishment did not stop the interest. The money was not due. The shortage was settled by the chancellor, upon the preponderance of the evidence.

2. There never was an agreement by appellee to pay the levee taxes. The other questions are the rent or earnings of the hotel to December 22. Appellant owes interest on $5,000 to June 30, 1914; rent to December 22, 1913; but appellee does not owe for the shortage, nor for the levee taxes. 108 Ark. 430 is decisive as to the admissibility of parol testimony to show the true consideration. See also 109 *Id.* 82. But really there was no shortage and parol proof is admissible to show the true consideration, or that other considerations not recited in the written instrument were agreed to be paid, where the proof does not contradict the terms of the writing. 62 Ark. 330; 90 *Id.* 426; 109 *Id.* 82; 108 *Id.* 430.

On the cross-appeal appellee is entitled to judgment for the earnings of the hotel. A local assessment is not a *tax.* 56 Ark. 503; 21 *Id.* 41; 96 *Id.* 74. As to the shortage and interest the decree should be affirmed; as to the levee assessment and earnings of the hotel it should be reversed.

*Webber & Webber,* in reply.

In reply on the cross-appeal, appellant's attorneys contend the decree as to levee taxes should be affirmed, as also the decree as to the earnings of the hotel, citing 21 Ark. 41; 18 L. Ed. U. S. 314; 96 Ark. 371; 96 *Id.* 421. "Taxes" include levee taxes and appellee can take nothing by his cross-appeal.

WOOD, J., (after stating the facts). The evidence is voluminous and we will not undertake to set out and discuss in detail all the evidence bearing upon the issues as it could serve no useful purpose and would unnecessarily extend the opinion.

I. (1) The appellant contends that the garnishment proceedings prevented him from complying with his contract to execute the note and mortgage for the hotel property of the appellee, and that he is therefore not liable for the interest on the $5,000 deposited in the bank. It is a well settled rule that a garnishee, after service of the writ upon him must retain possession of all property and effects of the principal debtor in his hands, and if he fails to do so he is liable for the value of the same to the plaintiff in the principal action. Such was the holding of this court in *Adams* v. *Penzell*, 40 Ark. 531. See also 20 Cyc. 1068-9.

Appellant cites and relies upon the above case. But in that case the garnishee had in his possession funds belonging to the debtor defendant in the original suit which he paid out after a lien was fixed upon same by the service of a writ of garnishment upon him, and, of course, it was held that he paid at his peril the proceeds belonging to the debtor in the original suit. *Bergman* v. *Sells & Co.*, 39 Ark. 97-101. But the facts of this record differentiate the case at bar from *Adams* v. *Penzell, supra,* and the rule there announced has no application here.

(2) The debt from appellant to appellee, which should have been evidenced by the note and mortgage, under the contract between them, was not due until January 1, 1915. If, therefore, appellant had answered the garnishment to the effect that he had executed the note to the appellee in accordance with his contract, and that he would be due the appellee on the 1st of January, 1915, the amount evidenced by the note and mortgage, and if judgment had been rendered against the original debtor in favor of the plaintiff and also against the appellant as garnishee, appellant could not have been made to pay the judgment until his note to appellee was due. The record discloses, therefore, that appellant was not, and could not have been, injured by the service of the writ of garnishment. He had no assets in his hands at that time belonging to the appellee. He had paid nothing to the appellee and was not bound to pay him anything until

January 1, 1915. The service of this writ on appellant was no legal justification for his failure to execute the note and mortgage in accordance with his contract with appellee.

(3)    While the $5,000 was deposited in the bank, yet the deposit was made upon certain conditions not bottomed upon the contract between appellee and appellant for the sale of the hotel property. Appellant himself testified, in part, as follows: "I learned before I got home that I had been garnisheed and I preferred not to execute the note and mortgage, although I had agreed to do so, and I wrote a letter to the bank which is made an exhibit to my deposition, in which letter I made certain requirements and propositions which were never complied with. Mr. Warmack never did surrender to me the original contract for the purchase of the hotel and I did not turn over to him any of the money deposited in the bank until June 30, 1914, when a new contract was made. The money remained subject to my orders through the bank. The bank had instructions to pay it to him on certain conditions, with which he never complied, and the money remained mine until he complied with those requirements." And the letter to which he referred shows clearly that appellant, without expressly repudiating the binding force of the contract, did not propose to comply with it, but undertook to make a different contract without the consent of the appellee. In this letter to the bank, giving instructions as to conditions upon which appellee was authorized to draw the $5,000, among other things, he says: "Mr. Warmack desired a mortgage on my hotel property here. I have never given a mortgage. I have almost unlimited credit, even in New York City, without mortgage. My credit would suffer by my signing such a document. In lieu of this and to provide Warmack with the funds he professes to need at once, I will be willing to pay $5,000 on this at once and the rest, unsecured, on my note until due."

It thus appears from appellant's own testimony that he ignored the obligations of his contract and retained

the $5,000, which was a part of the consideration for the purchase price of the hotel and for which he should have executed his note and the mortgage, and that he had the use of the money on which he should have been paying interest from the 22d day of December, 1913.

The judgment of the court, therefore, awarding to appellee interest on this sum, was correct.

II. Appellant contends that the court erred in denying his claim for shortage in personal property, amounting to $2,729.40, under the original contract for exchange of properties between him and the appellee.

The appellee contends that whatever shortage there was in the personal property contemplated in the contract of November 17, 1913, for the exchange of properties between the appellant and the appellee was settled and included as a part of the consideration of $15,000 which appellant was to give appellee for the hotel under their contract of December 22, 1913.

(4) As to whether or not this shortage in personal property claimed by appellant was settled by appellee and included as a part of the consideration of $15,000 which appellant agreed to pay the appellee for the hotel property is purely one of fact but appellant contends that under the contract (December 22, 1913), that fact can not be established by oral testimony.

The contract of December 22, 1913, recited as follows: "I hereby sell to Ed Hockaday the Hockaday Hotel for fifteen thousand, $15,000.00, paid with note due Jan. 1, 1915, at 8 per cent interest from date to be secured by mortgage on said Hockaday Hotel."

In *Ward* v. *Cooper-Searan Grocery Co.*, 108 Ark. 430, we held that parol evidence was admissible to show that the consideration was not as recited in the instrument, and that in a controversy as to the amount due by plaintiff to defendant under the bill of sale it was competent to show by parol evidence how the parties arrived at the amount. And in *McGill Lumber Co.* v. *Lane-White Lumber Co.*, 90 Ark. 426, we held that, while the recitals in a bill of sale could not be contradicted by parol evi-

dence for the purpose of defeating the instrument, it was competent to prove by such evidence that other considerations, not recited, were agreed to be paid when such proof does not contradict the terms of the writing, and that an acknowedgment in a bill of sale of the receipt of the consideration named therein, construed as a receipt for the whole consideration, was, nevertheless, only *prima facie* evidence of the fact and might be rebutted by parol evidence.

It will be observed that in the memorandum of agreement or contract for the purchase of the hotel by appellant from appellee the consideration is expressed in general terms and is merely an acknowledgment that the amount named had been paid by a note as the purchase price. No other consideration of a contractual nature in addition to this is specified. The deed executed by appellee in pursuance of this memorandum of agreement was likewise, so far as the consideration is concerned, no more than a mere statement of fact or acknowledgment that the sum of $15,000 was paid, for the property. It simply recites that such was the consideration and acknowledges the receipt thereof. The written contract of December 22, 1913, and the deed into which it was merged, come within the doctrine of this case, and oral evidence was therefore competent to show that the amount of the alleged shortage of personal property was considered and included as a part of the consideration of $15,000 which appellant was to pay appellee for the hotel.

The doctrine of *Williams* v. *C., R. I. & P. Ry. Co.*, 109 Ark. 82, relied upon by appellant to sustain his contention that parol evidence was inadmissible, is not in conflict, but in harmony, with the above cases. There we said: "The contract before us contains more than a mere recital or acknowledgment of the amount to be paid as the consideration. The writing showed upon its face that it concerning the subject-matter stated, and that the amount was a compromise of the differences between the parties to be paid was a part of the contract. That part of the contract constituted more than a mere receipt for the money paid, and it would be inconsistent with the express

terms of the writing itself to prove an additional or further consideration." The court, through the Chief Justice, reiterates the doctrine announced above in the former cases, that "parol proof is admissible to establish the fact that other considerations, not recited in a deed or written contract, were to be paid when such proof does not contradict the terms of the writing," and quotes many authorities stating and showing that such is the rule where the statement of the consideration is, in general terms, an acknowledgment of the payment of a stated sum of money and contains no other recitals, of a contractual nature, as a part of the consideration.

Without reviewing in detail the evidence on this point, it suffices to say that a finding to the effect that all differences that existed between the appellant and the appellee with reference to the alleged shortage of personal property under the contract of November 17, 1913, were adjusted and that the value of such shortage was included as a part of the consideration of $15,000 which appellant was to pay appellee for the hotel property, is not clearly against the preponderance of the evidence. There is a decided conflict in the evidence on this issue, but the chancellor's finding, not being clearly against the weight of the evidence, must be sustained.

III. The appellee contends that under the contract of November 17, 1913, he was not liable for the levee taxes for that year, and that the court erred in rendering a decree against him for such taxes.

(5) The contract of November 17, 1913, for exchange of properties, provided that appellee was "to pay all taxes for 1913" on the lands transferred by him to the appellant, and appellee contends that the word "taxes" as used in the contract does not include levee taxes, and he relies upon *Sanders* v. *Brown*, 65 Ark. 498, and *Stewart* v. *Fleming*, 96 Ark. 371.

In *Sanders* v. *Brown*, *supra*, Brown purchased of Sanders certain lots under a deed which contained the following warranty; "We hereby covenant with the said B. J. Brown that we will forever warrant and defend the

title to said lots against all lawful claims whatever, except the taxes of the year 1893, which the grantee is to pay." The lands were in an improvement district in the city of Little Rock and they had been assessed for five years for the local improvement. Sanders having failed to pay the assessment for the year 1893, Brown was compelled to pay the same, and he brought suit at law against Sanders to recover the amount paid, claiming that under the language of the exception contained in the warranty, assessments for local improvements were not taxes, and that Sanders was therefore liable to him under his general warranty.

The case turned wholly upon the meaning of the word *taxes* as used in the exception to the warranty clause in the deed. The court said: "Plaintiff contends that the word *assessment* is not included in the word *taxes,* but that the two mean different things, and in this we are of the opinion that he is correct. *McGehee* v. *Mathis,* 21 Ark. 41. The assessment sued for not being covered by the exception to the warranty, the plaintiff was not bound to pay the same, but the defendant was, under his warranty."

In *Stewart* v. *Fleming, supra,* plaintiff sued on a contract to recover rents for the year 1908 and levee taxes for the years 1907 and 1908, which defendant had refused to pay. The contract sued on provided, among other things, that the defendant, Stewart, should "keep all taxes and legal assessments on or against said lands promptly paid as the same should come due." Defendant, in his answer, denied that he had ever agreed to pay levee taxes on the land, and set up that he had leased the land from plaintiff under a former written contract, not the one sued on, in which he was to pay the taxes assessed against the land during the period of the lease, and that that contract did not contain the words "any legal assessments on or against said lands," as contained in the contract sued on; that the last contract, the one sued on, was intended as a continuation of the former contract, but that the words, "any legal assessments on or against said

lands" were inserted in the contract by the agent of the plaintiff and the contract was signed by the defendant through mistake, relying upon the representations of the plaintiff's agent that it contained the same provisions and stipulations as the former contract except as to the amount of rent. The defendant prayed that the case be transferred to chancery, etc. On motion of the plaintiff in that case the court struck out the allegations and prayer. In holding that the lower court erred in so doing, we said: "This, we think, constituted a good defense to the suit for the recovery of the levee taxes, and the court erred in striking it from the answer. There was a very material difference between the two contracts with respect to the payment of taxes, in that the last contract— the one sued on—in addition to the agreement on the part of the defendant to keep all taxes on the land paid, added the words, 'and legal assessments.' The difference was a material one, for, under the language of the former contract specifying only 'taxes,' it could not have been within the contemplation of the parties that special assessments for levee purposes were to be included when no levee district had been organized at the time of the execution of the contract."

It is manifest from the above cases that the court construed the term 'taxes' as used in the contracts in those suits not to include assessments for local improvements, because there was no testimony to show that the parties to those contracts used the term in any other sense than in the ordinary sense of taxes for general revenue purposes. But, in the present case, without reviewing the evidence in detail, it is sufficient to state that the conduct, letters and statements of the appellee showed clearly that when he agreed to pay the taxes on the land which he gave in exchange to appellant for his hotel that he contemplated the payment of all taxes, including local assessments.

In *Shibley* v. *Fort Smith & Van Buren B. Dist.*, 96 Ark. 421, we said: "The word 'tax' may be, and sometimes is, susceptible of a different meaning when

used in a different connection, according to the manifest intention of the framers of the Constitution. When the Constitution of 1874 was framed, the plan of construing levees as local improvements, to be paid for by special assessments on the lands to be affected thereby, was a part of our legislative scheme. * * * It is obvious that the framers of the Constitution used the word 'tax' in the homestead provision as meaning all assessments or impositions authorized under the taxing power.''

Now, at the time appellee agreed to pay the taxes for the year 1913 on his plantation of 883 acres, the levee district had been organized, and it is unreasonable, under the testimony, to conclude that he did not know that assessments had been levied on his lands for the year 1913, for levee purposes. The proof tends strongly to show that he did know it. The finding of the chancellor to the effect that he intended by his agreement to pay the taxes to include the assessment for levee purposes for the year 1913, is certainly not against the clear preponderance of the evidence. We are convinced from the contract and all the evidence that the appellee, on his part, contemplated that the appellant should take the land free of incumbrance of every character except the $18,000 mortgage, which appellee assumed, and that appellant, on his part, likewise contemplated that appellee should take the hotel free from liens of every character.

IV. Appellee next contends that the court erred in not rendering a decree in his favor for earnings of the hotel from November 17, 1913, to December 22, 1913. Appellant's testimony and the exhibits to his deposition tend to show that during the time that appellee owned the hotel, and same was operated by appellant, from November 17, to December 22, 1913, there were no net profits, but a loss. This was purely an issue of fact, and it is sufficient to say that the preponderance of the evidence on the issue was in favor of the finding of the chancellor.

The decree is correct and it is in all things affirmed.