HARRIS v. HARRIS.

4-6147                    146 S. W. 2d 539

Opinion delivered January 13, 1941.

*R. W. Tucker,* for appellant.

*Pickens & Pickens,* for appellee.

HOLT, J.   May 15, 1934, A. J. Harris, appellant, obtained a judgment in the Independence circuit court against Dora Fraser in the amount of $133.95.   This judgment not having been paid, appellant filed allegations and interrogatories for writ of garnishment February 28, 1938, and this writ was duly served on appellee, Dr. Marcus Harris, garnishee, March 10, 1938.

The interrogatories so propounded by appellant, and the answers thereto of appellee, Dr. Marcus Harris, filed April 4, 1938, are as follows:

"1.   Were you, on and after the service of garnishment herein upon you, indebted to Dora Fraser, the defendant?  If so, how, and in what amount?

"Answer:   I executed two notes to Dora Fraser, one for $3,000 and one for approximately $300, on which there is a balance due in the year 1943, nothing due at this time.   One of these notes is now owned by a bank at Tuckerman.

"2.   Have you had in your hands or possession, on or after the service of the writ of garnishment herein upon you, any goods, chattels, moneys, credits, or effects belonging to Dora Fraser, the defendant?  If so, what was the nature and value thereof?

"Answer:   No."

April 11, 1938, appellant (plaintiff below) filed a reply to the answers of appellee, as garnishee, to the said interrogatories, in which appellant denied that they

were true and correct answers, and denied that his answer to interrogatory No. 1 was sufficient because "The garnishee does not state which note is owned by the bank at Tuckerman, nor does he state when the $3,000 note is due, and how it is being paid."

There was no further answer or response on the part of Dr. Harris, garnishee, until in March, 1940, at which time in answer to additional interrogatories propounded to him by appellant, he admitted that at the time the writ of garnishment, *supra,* was served on him, March 10, 1938, he (appellee) was making payments of $20 per month to Dora Fraser, the judgment debtor; that he ceased making these payments when the writ of garnishment was served upon him; but that after there had accumulated in his hands the sum of $240, he paid this amount over to Dora Fraser, the judgment debtor.

April 1, 1940, the matter was tried before the court, sitting as a jury, and the court dismissed the writ of garnishment and rendered judgment in favor of garnishee (appellee here), as stated by appellee in his brief, "for the reason that there was no showing that there was anything due upon either of said notes and therefore Dr. Marcus Harris is not subject to garnishment." The case is here on appeal.

The record reflects that on the date the writ of garnishment was served upon the garnishee, Dr. Marcus Harris, he had executed two notes due in 1943 to Dora Fraser, the judgment debtor, one in the amount of $3,000 and the other in the amount of $300, one of these notes being owned by a bank at Tuckerman. Just which one of the notes the bank at Tuckerman owned is not disclosed.

It further appears that at the time the garnishment was served, the garnishee was paying to Dora Fraser $20 per month, and that while he ceased to make these payments when the writ was served, thereafter, after allowing $240 to accumulate in his hands, he paid this amount over to Dora Fraser as part payment on one of the notes. This $240 payment was made to Dora Fraser before the garnishee, Dr. Harris, had made full and com-

plete and satisfactory answers to appellant's interrogatories. Full, true, and complete answers, as contemplated under §§ 6123 and 6124 of Pope's Digest were not made by the garnishee until March 21, 1940.

It is the settled rule that the effect of the service of the writ of garnishment is to impound all property in the hands of the garnishee belonging to the judgment debtor (in the instant case, Dora Fraser) at the time of service, or that may thereafter come into his hands, up until the filing by him of a true and correct answer. *Magnolia Petroleum Co.* v. *Wasson,* 192 Ark. 554, 92 S. W. 2d 860. In the Magnolia Petroleum case we held that "Recovery in garnishment proceedings can be had only up to date of filing answer."

In *Hockaday* v. *Warmack,* 121 Ark. 518, 182 S. W. 263, this court said: "It is a well settled rule that a garnishee, after service of the writ upon him must retain possession of all property and effects of the principal debtor in his hands, and if he fails to do so he is liable for the value of the same to the plaintiff in the principal action. Such was the holding of this court in *Adams* v. *Penzell,* 40 Ark. 531."

It is earnestly contended, however, by appellee that the trial court correctly quashed the writ and dismissed the garnishee for the reason that neither of the notes in question was due at the time of the service of garnishment. It is our view, however, that the court erred in so holding.

The general rule on this question is stated in 28 C. J. 129, § 171, in the following language: "Under some statutes it has been held that a debt not presently payable is not subject to garnishment. But generally debts contracted, although not presently payable or matured, but which will certainly become payable in the future, may be reached. And this, although the terminology of the statute is that claims or debts 'due' may be garnished, the term 'due' being taken in its larger sense as importing merely an existing obligation, without reference to the time of payment. In some jurisdictions the statutes expressly authorize the garnishment of debts

absolutely payable *in futuro*. In order, however, that a debt not presently payable may be reached by garnishment, it must be one which will become payable absolutely, and not dependent upon any contingency.''

Under this section the author cites our own case of *Dunnegan, et al.* v. *Byers,* 17 Ark. 492, which follows the general rule. There this court held that a promissory note was subject to garnishment before it became due. We quote from the opinion as follows:

''The only question really, which is legitimately presented upon the record, for our consideration is, whether the appellants were subject to the process of garnishment until after the debt was due.

''In cases of attachment and garnishment, either before a justice of the peace or in the circuit court, the statutes contemplate that the garnishee may be summoned before the debt is due, and provide for a stay of execution until after its maturity, where it is not due when the judgment is rendered. Digest, chap. 16, §§ 16, 20; chap. 17, §§ 26, 37.

''The statute providing for judicial garnishments (Digest, chap. 78) is silent on this point; but it is equally as broad and comprehensive as the statutes above referred to, as to what effects of the principal debtor may be reached in the hands of the garnishee. It provides: 'In all cases where any plaintiff may have obtained a judgment . . ., and shall have reason to believe that any other person is indebted to the defendant, or has in his hands, . . . goods and chattels, moneys, credits and effects belonging to such defendant, such plaintiff may sue out a writ of garnishment, . . .' Section 1.

''Again: 'The plaintiff . . . shall file allegations and interrogatories . . . upon which he may be desirous of obtaining the answer of such garnishee, touching the goods and chattels, moneys, credits and effects of the said defendant, and the value thereof, in his hands and possession at the time of the service of such writ, or at any time thereafter.' Section 3.

''In Massachusetts, under a statute not more comprehensive in its terms than this, it is well settled that a

debt, certainly payable at some future day, and not dependent upon a contingency, is subject to garnishment or trustee process, as it is called there. (Citing cases.)

"In *Childress* v. *Dickens, et al.,* 8 Yerger (Tenn.) 113, it was held, that by the statutes of Tennessee, a debt which was not due could not be attached in the hands of a garnishee. That the garnishee was only required to answer what he was indebted at the time of the summons.

"But, by our statute, the garnishee is required to answer as to his indebtedness, etc., at the time of the service of the writ, or at any time thereafter.

"We think the statute is broad enough to cover debts falling due after the issuance and service of the writ: and if not due at the time the garnishee answers, being, to some extent, in the nature of an equity proceedings (*Walker* v. *Bradley,* 2 Ark. 578) the court would have the power to continue the case until the maturity of the debt, or render judgment with stay of execution.

"There is no good reason, why a debt not due, should be subject to the process of attachment and garnishment and not to judicial garnishment.

"The debtor has no cause of complaint. It merely fixes a lien upon the debt in his hands, in favor of the plaintiff in the garnishment; he is allowed the privilege of answering; the benefit of all just defenses; he is not subjected to costs, and not required to pay the debt until it is due. A more rigid and narrow construction of the statute would restrict its usefulness."

Our present garnishment statutes, §§ 6119, 6123, 6124 and 6125 of Pope's Digest, are in all essentials identical with the garnishment statutes existing and in force at the time the Dunnegan case, *supra,* was decided.

In the instant case the judgment debtor owned and held one of the notes executed to her by Dr. Marcus Harris, garnishee, at the time the writ of garnishment was served on him. It had never been negotiated. He was making payments on it at the time the garnishment was served March 10, 1938, and when his answer giving true and correct answers was filed March 21, 1940, he

had actually paid to Dora Fraser, the judgment debtor, $240, an amount more than necessary to pay appellant's judgment against her.

We conclude, therefore, that the trial court erred in quashing the garnishment and discharging the garnishee, and for the errors indicated the judgment is reversed and judgment will be entered here against appellee, Dr. Marcus Harris (garnishee below) for $133.95 with interest at 6 per cent. from May 15, 1934, together with costs.