# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2565

_____

|  |  |  |
|---|---|---|
| In re: Southwestern Glass Company, Inc., | * | |
| | * | |
| | * | |
| Debtor. | * | |
| _____ | * | |
| | * | |
| Waelder Oil & Gas, Inc.; | * | |
| Fred J. Waelder, | * | |
| | * | |
| Plaintiffs/Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Southwestern Glass Company, Inc., | * | |
| | * | |
| Defendant, | * | |
| | * | |
| v. | * | |
| | * | |
| The Bank of Arkansas, NA, | * | |
| | * | |
| Garnishee/Appellant. | * | |

_____

Submitted: December 12, 2002

Filed: June 11, 2003

_____

Before BOWMAN, RILEY, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Waelder Oil & Gas, Inc. and Fred Waelder (collectively Waelder) served a writ of garnishment upon the Bank of Arkansas, NA (Bank) to obtain any Southwestern Glass Company (Southwestern) property held by the Bank. Answering the writ, the Bank turned over approximately $5,000 held in a Southwestern checking account, but did not disclose a credit arrangement using a loan manager account, a type of zero balance account. Waelder challenged the Bank's answers to the writ of garnishment. After removal to the Western District of Arkansas, and transfer to the bankruptcy court, the district court[1] concluded the funds flowing through the loan manager account were subject to garnishment and thus found the Bank failed to answer truthfully the interrogatories accompanying the writ of garnishment. The district court entered judgment against the Bank for $583,628.52 plus interest. The Bank appeals. We affirm.

I.    BACKGROUND

On July 30, 1999, Southwestern and the Bank entered into a Loan Agreement (Agreement), executing a Variable Rate Commercial Revolving or Draw Note (Note). The Note extended a one million dollar line of credit to Southwestern and stated the line of credit was only to be used for working capital. Pursuant to the Agreement, Southwestern established a commercial checking account (the loan manager account) on which Southwestern was the sole signatory. To use the line of credit, Southwestern would draw a check on the loan manager account in favor of a party providing goods or services. If sufficient credit existed under Southwestern's line of credit, the Bank would honor the check. The loan manager account statements identified the disbursements to the payees as withdrawals and identified advances

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, adopting the recommended findings of fact and conclusions of law of the Honorable Robert F. Fussell, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

from Southwestern's line of credit as deposits into the loan manager account. Southwestern paid down the line of credit by transferring funds from other banks directly to the Bank.

About a year after the Bank and Southwestern entered the Agreement, Waelder obtained a judgment against Southwestern for $517,000 in Arkansas state court. To collect the judgment, Waelder issued a writ of garnishment upon the Bank. Answering the interrogatories accompanying the writ, the Bank disclosed it held approximately $5,000 in a Southwestern checking account and Southwestern's loan manager account had a zero balance. Waelder issued two more writs of garnishment upon the Bank. In answering the interrogatories accompanying these writs, the Bank stated it did not hold any of Southwestern's property in its checking account and again stated the balance in the loan manager account was zero.

After Southwestern filed for Chapter 11 protection, Waelder contested the Bank's answers to interrogatories in Arkansas state court. The Bank removed the case to the United States District Court for the Western District of Arkansas. After removal, the district court transferred the matter to the bankruptcy court. In recommended findings of fact and conclusions of law, the bankruptcy court concluded the proceeds from Southwestern's line of credit flowed through the loan manager account to pay the checks, the proceeds were Southwestern's property, the proceeds were subject to garnishment, and the loan manager account was not a special deposit account. Finding the Bank filed false answers, the bankruptcy court adjudged the Bank liable for the full amount of Waelder's judgment together with ten percent interest and attorney fees.

The Bank objected to the bankruptcy court's recommendation. After a hearing, and reviewing the case de novo, the district court adopted the bankruptcy court's recommended findings of fact and conclusions of law. On appeal to this court, the Bank contends (1) the funds dispersed from the line of credit were not subject to

garnishment under the Arkansas Code; and (2) the loan manager account was a special deposit account immune from garnishment. We review the district court's findings of fact for clear error and the court's conclusions of law de novo. Tadlock v. Powell, 291 F.3d 541, 546 (8th Cir. 2002).

## II.  DISCUSSION

### A.  Proceeds From Southwestern's Line of Credit

The Arkansas Code allows a judgment creditor to issue a writ of garnishment to any person the judgment creditor believes "is indebted to the [judgment debtor] or has in his hands or possession goods and chattels, moneys, credits, and effects belonging to the [judgment debtor]." ARK. CODE ANN. § 16-110-401(a)(1) (Michie 1987). The service of a writ of garnishment casts a net which captures all the judgment debtor's goods and chattels, money, credits, and effects in the garnishee's possession until the garnishee submits correct answers to the interrogatories accompanying the writ. See Harris v. Harris, 146 S.W.2d 539, 540 (Ark. 1941). "[I]f the garnishee makes any payment to the [judgment debtor] after the service of the writ of garnishment he does so at his own peril."[2] Bray v. Ed Willey & Son, 395 S.W.2d 342, 343 (Ark. 1965). If the court determines the garnishee filed false answers to the writ of garnishment, the garnishee is liable for the value of the judgment debtor's property held by the garnishee to the extent the judgment creditor's judgment remains unsatisfied. ARK. CODE ANN. §§ 16-110-405 & -410; T & T Materials, Inc. v. Mooney, 4 S.W.3d 512, 516 (Ark. Ct. App. 1999).

---

[2]The garnishee must stand neutral with the money or other property in its possession, disclose all information relating to that property, and hold the property pending a decision by the court. McMahan & Co. v. Po Folks, Inc., 206 F.3d 627, 633 (6th Cir. 2000) (citing Board of Regents v. Harriman, 857 S.W.2d 445, 451 (Mo. Ct. App. 1993)). When the garnishee does so, the garnishee is entitled to protection, but when the garnishee abandons its position as a stakeholder, the garnishee assumes a risk and must accept the outcome of the battle it has chosen. Id.

In determining whether the Bank possessed moneys or credits of Southwestern, we must examine the interaction between Southwestern's loan manager account and Southwestern's line of credit. First, Southwestern draws a check on the loan manager account in favor of a party providing goods or services (payee). The payee deposits the check in its bank. The payee's bank presents the check for payment to the Bank. The Bank compares the amount of the check against the available credit on Southwestern's line of credit. If a sufficient amount of credit exists to cover the check, the Bank honors the check. The amounts advanced to honor the checks then flow into the loan manager account. The Bank disburses the funds in the loan manager account to the payee bank.[3] Southwestern may transfer money directly to the Bank to pay down Southwestern's line of credit. At the end of the day, the Bank processes all of the checks. On the Bank's records, the credits advanced are listed as

_____

[3]The Bank's attorney elicited the following testimony from Debbie Chastain, Bank of Oklahoma Assistant Vice President and Product Manager for loan products offered by the Bank:

Q. Regardless of how we color this picture, Ms. Chastain, the money that goes into this demand deposit account that we're talking about today, that is in the name of Southwestern Glass, Inc. in the [loan manager account], the only monies coming into that account during these periods of times [sic] was [sic] advances on the line of credit, is that correct?

A: That is correct.

Q: And that money was transferred for the specific purpose of paying those checks that had been presented for payment in that pre-posting batch process, is that correct?

A: That is correct.

deposits to Southwestern's loan manager account and the debits are noted as withdrawals from the loan manager account.

The Bank contends the bankruptcy court erred in finding the proceeds from Southwestern's line of credit flowed through Southwestern's loan manager account. The evidence presented the bankruptcy court with two possible interpretations. The testimony of the Bank's personnel indicated the Bank directly paid the checks drawn on the loan manager account from its own funds, merely using the loan manager account as an accounting mechanism. Conversely, the Bank's official records indicate the funds used to honor the checks were deposits or fund transfers from Southwestern's line of credit. The bankruptcy court credited the version of the transaction indicated by the Bank's records rather than the version portrayed by the Bank's personnel. When two different interpretations of the record exist, "the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).

A judgment creditor may garnish loan proceeds in a judgment debtor's account. See First Nat'l Bank in Dallas v. Banco Longoria, S.A., 356 S.W.2d 192, 196 (Tex. Civ. App. 1962). In First National, a judgment creditor issued a writ of garnishment upon First National Bank. Between service of the writ of garnishment and answering the writ, First National Bank loaned money to the judgment debtor, transferred the proceeds of the loan into the judgment debtor's account, and paid the amount out to other parties upon the judgment debtor's draft. The Texas Court of Civil Appeals concluded the proceeds of the loan deposited into the judgment debtor's account were subject to garnishment even though the judgment debtor borrowed the money to meet payroll and paid interest on the amount loaned. Id.

The Southwestern case is analogous to First National. When the Bank was presented with a check drawn on the loan manager account, the Bank advanced and transferred funds from Southwestern's line of credit into the loan manager account.

The Bank then disbursed the funds transferred to the payee on Southwestern's check. Thus, Waelder's writ of garnishment attached to the proceeds of Southwestern's line of credit as the proceeds flowed through the loan manager account. The proceeds from Southwestern's line of credit in the loan manager account are clearly money or credits of Southwestern.

The Bank's most compelling argument is Waelder cannot garnish the amounts used to honor the checks drawn on the loan manager account because one cannot garnish or attach a line of credit. See Oceanfocus Shipping Ltd. v. Naviera Humboldt, S.A., 962 F. Supp. 1481, 1483-86 (S.D. Fla. 1996) (holding a secured line of credit cannot be attached in an admiralty proceeding); Sears, Roebuck & Co. v. Romano, 482 A.2d 50, 54 (N.J. Super. Ct. Law Div. 1984) (holding a line of credit for overdraft protection is not subject to levy). We are not persuaded by the Bank's argument. In both Oceanfocus and Sears, a party attempted to attach or garnish a line of credit and to compel the lender to pay over the amount available on the line of credit. Oceanfocus, 962 F. Supp. at 1483; Sears, 482 A.2d at 50-51. In both cases, the courts concluded the party could not attach or garnish the line of credit. Oceanfocus, 962 F. Supp. at 1483-86; Sears, 482 A.2d at 54. Waelder seeks only to attach the proceeds from Southwestern's line of credit transferred to Southwestern's loan manager account, not Southwestern's line of credit itself. Because the advances flowed through Southwestern's loan manager account which Southwestern controlled, we hold the proceeds from Southwestern's line of credit transferred into the loan manager account became money or credits belonging to Southwestern for the brief period of time between the transfer of the proceeds to the account and disbursement of the proceeds to the payee. Thus, Waelder's writ of garnishment captured the proceeds transferred into the loan manager account.

## B.     Special Deposit Accounts

The Bank contends, even if the funds transferred to Southwestern's loan manger account are money or credits, the Southwestern loan manager account is a

special deposit account not subject to a writ of garnishment. See Geyer & Adams Co. v. Bank of Cent. Ark., 282 S.W. 358, 359 (Ark. 1926) (concluding a restricted or special deposit account is not subject to garnishment). A special deposit account is created,

> if the money is placed in a bank for the purpose of safekeeping or on an understanding that the bank shall act as bailee or deliver the money under certain circumstances or to apply it to special purposes, or where the deposit is made under circumstances such as to give rise to a necessary implication that it was for such purposes, the deposit is a special deposit and the bank is merely an agent or bailee with no right to use, dispose or permit a disposition of the deposit except pursuant to the terms of the agreement.

Lasley v. Bank of Northeast Ark., 627 S.W.2d 261, 263 (Ark. Ct. App. 1982) (discussing special deposit accounts in determining if a bank had converted deposited funds).

The Bank contends the loan manager account is analogous to the account in Geyer. We disagree. In Geyer, the bank held advances in a general deposit account. The judgment debtor and the bank agreed the funds in the account would be used to pay the expenses of raising crops and "for no other purpose." Geyer, 282 S.W. at 358. Under the agreement, the bank also had the right to "cancel or refuse to cash any check or checks drawn on the account for other purposes." Id. On appeal, the Arkansas Supreme Court concluded the advances were restricted and held in the judgment debtor's special deposit account, and as such, were not subject to garnishment. Id. at 359. The Arkansas Supreme Court explained the funds were "deposited to the credit of [the judgment debtor] . . . for a special purpose, so neither [the judgment debtor] nor his general creditors had any right to divert it." Id.

The Southwestern Note states the line of credit is for working capital, which is a general purpose rather than a special purpose. No other words of restriction are

used. Furthermore, the Bank's employees testified the Bank had no authority to dishonor a check, if sufficient credit were available. Bank personnel also testified the Bank did not have a procedure to verify the checks were being used for working capital and, in fact, did not verify whether the checks were for working capital.

Although dissimilar from Geyer, Southwestern's loan manager account is similar to the account in Pate v. Bryan, 7 S.W.2d 776 (Ark. 1928). In Pate, a judgment creditor issued a writ of garnishment upon a bank in which the judgment debtor had an account. The bank answered the writ, stating it held property belonging to the judgment debtor. A third party intervened in the garnishment proceeding, asserting the property in the bank's possession belonged to him and the property was to be used "in payment of claims for labor and material furnished in the construction of [a] house." Id. at 777. The Arkansas Supreme Court disagreed with the intervenor's contention, concluding the trial court erred in finding the account was a special deposit account. Id. at 778. The Arkansas Supreme Court noted the judgment debtor deposited money in the bank without restriction. Id. at 777. Additionally, the Arkansas Supreme Court noted neither the third party nor the bank "retained any control over the fund advanced." Id. at 778.

In our case, the Bank did not exercise control over the funds advanced to the loan manager account. The Bank honored any check as long as sufficient credit was available under Southwestern's line of credit. For the foregoing reasons, we conclude the loan manager account is not a special deposit account.

## III. CONCLUSION
The district court's judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.