### HARRISON *v*. FIRST NATIONAL BANK OF HUNTSVILLE.

### Opinion delivered March 1, 1915.

1. DEBT—APPROPRIATION OF PAYMENTS.—A debtor paying money to his creditor has the right to direct the application of his money to such items or demands as he chooses.

2. DEBT—APPROPRIATION OF PAYMENTS—CHANGE.—A direction by the debtor as to the application of payments may be changed by an express agreement between the debtor and creditor, or by the express declaration of the debtor, or it may be implied by circumstances showing the debtor's intention.

3. DEBT—PAYMENT—DISCHARGE OF SURETY.—N. was surety on a note on which H. was primarily liable. H. sent to the bank, which held the note, a sum of money, directing it to credit the same "upon my note." H. had several other notes due at the same bank. *Held*, under the evidence, there could be no mistake that H. meant the note on which N. was surety, and that his directions to the bank constituted such an appropriation and application of the payment as discharged the note for the full amount sent to the bank, so far as N., the surety, was concerned, and it could not afterward be changed, even by the consent of the debtor, to N.'s prejudice.

Appeal from Madison Chancery Court; *T. H. Humphreys*, Chancellor; reversed.

#### STATEMENT BY THE COURT.

Appellants borrowed $2,000 from the First National Bank of Huntsville, with which to purchase a stock of merchandise for their partnership of Harrison & Neal Bros., and executed the following note therefor;

|  | Date |
|---|---|
| "$2,000.00  Huntsville, Ark., Nov. 30, 1912. | Nov. 27-13 |
|  | $2,000.00 |
|  | 1,016.55 |
|  | $  983.45 |

"July 1, 1913, we promise to pay to the order of
THE FIRST NATIONAL BANK
Two thousand & no/100.....................Dollars for value received, negotiable and payable at its office

in Huntsville, Ark., without defalcation or discount, and with interest from date until paid at the rate of 10 per cent per annum. If the interest be not paid annually it shall become a part of the principal and bear the same rate of interest.

"The sureties and endorsers on this note severally agree to and do hereby waive demand of presentation of this note for payment to the makers hereof and waive protest and notice of nonpayment and do hereby grant to any holder of this note the right to grant extension without notifying them, or either of them, hereby ratifying such extension and remaining bound on this note as if no extension had been obtained.

"No. 1932. S. C. Harrison.
"Due July 30, 1913. Noah Neal,
"Post Office Roxton. Conrad Neal."

After the execution of the note, Noah and Conrad Neal sold their interest in the partnership to S. C. Harrison, who assumed the payment of said note as consideration therefor. The bank was advised of this arrangement and consented thereto with the understanding that said Noah and Conrad Neal remain bound on the note as sureties until a new note was executed, or until the stock of merchandise was sold.

Harrison sold the stock of goods to Ray Hanson about the 10th of November, 1913, for the sum of $1,906.32, Hanson having made arrangements with appellee bank before the purchase thereof for the sum with which to pay therefor, gave a check for said sum payable to the order of S. C. Harrison, who forwarded it to appellee bank with a letter directing that it be credited upon his note as follows:

"S. C. Harrison,
 "Dealer in General Merchandise,
  "Roxton, Ark., 11/10/1913.
"First National Bank,
 "Dear Sir: Enclosed you will find check for $1,904.50, nineteen hundred four and 50/100, for which please credit my note. I will be out there soon.
  "Yours, S. C. Harrison."

The bank claimed Harrison owed four other notes besides the one upon which the Neals were security, the largest being for $400. It received the check and claiming not to understand upon which note it was directed to be applied, placed it to the credit of S. C. Harrison and thereafter charged the amount of his overdraft and the amount of the other four notes against it and credited the note sued on with the balance $1,016.55. It claimed that Harrison came to the bank within a few days after the check was received in the letter and placed to his credit and agreed to the payment of the overdraft and the other notes out of the proceeds thereof which was then done.

Harrison denied having made any such agreement or application of the money and also that he had given any check against the amount as credited to his account.

The bank brought suit on the original note and appellants set up the fact that the note was paid by the check for the amount thereof virtually with the direction to so apply it. They alleged that the money for which the note was executed was originally borrowed with which to purchase the stock of goods, that the interest of the Neals in the stock of goods purchased was sold to Harrison for the amount due by them upon the note, who agreed to pay the note in consideration thereof; that later the bank loaned the money to Hanson with which to buy this same stock of goods all the while knowing that the note given for its purchase in the first instance had not been paid, and that the sureties were to continue bound only until Harrison could dispose of the stock of goods and pay same off. That they were discharged as sureties by the appropriation of the payment of the check given by Hanson as made by the direction in Harrison's letter to the bank, and that Harrison was insolvent.

The cashier of the bank admitted lending Hanson the money with which to buy the Harrison stock of goods and that it also knew that the Neals had sold out their interest in the stock of goods to Harrison in consideration

that he would pay the note sued on and agreed to stand security until it was paid or satisfied.

It appears that the bank had also loaned Harrison some other small amounts of money with which to purchase other goods that were added to the stock.

The chancellor found that Harrison directed the application of the payment of the proceeds of the check to his smaller notes and overdraft in the bank and that appellants were not entitled to have same appropriated to the payment of the note sued on and rendered judgment for the balance due after crediting same with the remainder of the proceeds of the check from which the smaller notes and overdraft were paid, and from this judgment the appeal is prosecuted.

*W. N. Ivie,* for appellants.

The rules of law as to application of payments which are applicable to the facts here, are thus stated: ''Where the payment, with the knowledge of the creditor, is derived from a third person, or from a fund connected with the secured debt, it must be applied thereto.''

''Where once apropriated by either party, or both, to the secured debt, the application can not be changed as against the surety.''    30 Cyc. 1252.

The debtor has the primary and paramount right to direct the application of payments. *Id.* 1228, 1230, 1231; 98 Ark. 459; 54 Ark. 446.

When appellee received and accepted the check, with the directions how to apply the same, it became a credit on the note to which appellee was directed to apply it, as a matter of law. If it did not intend to apply the check as directed, it was appellee's duty to have refused to accept and cash it.    94 Ark. 158; 98 Ark. 269.    The parties can not, even by mutual agreement, change an application to the prejudice of a third person without his consent.    73 Pac. 94; 31 Ill. 350; 4 Mich. 192; 28 Me. 81; 56 S. C. 435.

*Appellee, pro se.*

The fund was not derived from a third person, neither was the check connected with the secured debt

within the meaning of the law. See, 98 Ark. 459, cited by appellants.

The right to make application is confined to the debtor and creditor, and no third person can insist on any appropriation or application which has not been made by either party. 18 Am. & Eng. Enc. of L. (1 ed.) 244. Neither a surety nor a guarantor can insist that an appropriation shall be made for his benefit. 5 Mon. (Ky.) 253; 18 Mo. App. 583; 26 *Id*. 634; 75 N. Y. 461.

In this case it is admitted that the principal debtor, Harrison, made the application of the payment, but differ as to when the payment was made. Owing to the discrepancy in the amount of the check and the amount mentioned in Harrison's letter of transmission, appellee received the check and credited it to his checking account, and waited for him to come in. During this time, the money was at his disposal, and he was notified of that fact by letter.

There is no application of money as long as it is in the possession or control of the debtor. 7 Cal. 81. Conceding that Harrison first intended to apply the amount of the check on the note sued on, he had the right, so long as the fund was in his control, to change his mind, and make a different application, which he, of his own volition did, in this case. 30 Cyc. 1232, note 71; 2 Pa. 534.

KIRBY, J., (after stating the facts). The undisputed testimony shows that the appellants borrowed the money from the bank with which to purchase the stock of goods and executed the note in controversy therefor. That the Neals afterward sold their interest to Harrison, who agreed to pay the note as the consideration for the sale, and the bank was fully informed of these facts and agreed that the Neals should stand security upon the note until it was paid. Neither is there any dispute that the bank afterward loaned Hanson the money with which to purchase from Harrison the stock of merchandise after he had been six weeks in business and that Harrison took the check for $1,906.32, endorsed it and enclosed it in a letter to the bank with the directions to "credit same

upon my note'' and this note was the only one he owed to the bank as large in amount as the sum of the check.

The direction for the application of the payment to the note in controversy was so plain that it could not have been misunderstood. The bank officials it is true, claimed that since there was no note for the exact amount, they could not understand the direction and credited the amount to the account of Harrison and afterward induced him to agree to the application of the payment to the other notes first.

(1) A debtor has the right in the first instance to appropriate the payment made to any debt which he may owe.

''A debtor paying money to his creditor has the primary and paramount right to direct the application of his money to such items or demands as he chooses.''   30 Cyc. 1228.

(2) ''A direction by the debtor as to the application of payments may be changed by an express agreement between the debtor and creditor or by the express declaration of the debtor or it may be implied by circumstances showing the debtor's intention.''   30 Cyc. 1230.

In *Atkinson* v. *Cox*, 54 Ark. 444, this court said:

''There was uncontradicted proof that the defendant had delivered to the plaintiff cotton to be sold with directions that its proceeds be applied to the rent note. It was therefore the plaintiff's duty to have applied such proceeds to the extinguishment of the note, and a failure to do so could not be excused upon the ground that such application had been made to an account against the defendant.''

(3) The debtor Harrison sent the check which was accepted by the bank with the direction to credit same ''upon my note,'' meaning obviously the note sued on, executed jointly by all the appellants, and it was such an appropriation and application of the payment as discharged the note for the full amount of the check so far as the Neals, the sureties, are concerned, and it could not afterward be changed even by the consent of the

debtor to their prejudice. *Pinney* v. *French*, 73 Pac. (Kan.) 94; *Miller* v. *Montgomery*, 31 Ill. 350; *Codman* v. *Armstrong*, 28 Me. 91; *Reid* v. *Wells*, 56 S. C. 435.

The money paid to the bank was derived from the sale of a stock of goods originally bought by the parties with the money borrowed from the bank for the payment of which this note was executed, and it was known to the bank upon the sale of the interest of the Neals to Harrison that he assumed the payment of this note in consideration therefor, that Harrison was insolvent and the check given by Hanson to him was the consideration for the sale of the same stock of goods with such additions as had ben made thereto, and the bank will not be allowed to misunderstand the direction of the debtor, Harrison, to appropriate the proceeds of the sale of the stock of goods and change the application or appropriation from the payment of this note as directed to the payment of other notes owing it by the debtor, the law regarding the payment made as directed to the note, regardless of where the creditor in fact applied it. *Reid* v. *Wells*, *supra*.

It follows that the Neals were entitled to credit for the full amount of the check in payment of the note sued on and only liable for the balance due after allowing such credit. The decree is therefore reversed as to them, but affirmed as to S. C. Harrison and judgment will be rendered here in accordance with this opinion. It is so ordered.