GOWAN *v.* ROBINSON.

4-3962

Opinion delivered September 30, 1935.

*States & Boothe,* for appellant.

*Frierson & Frierson,* for appellees.

BUTLER, J. On the 15th day of November, 1929, two notes were executed to the appellant, Mrs. M. J. Gowan, in the sums of $900 each. One of these notes was signed by J. H. Hawthorne, B. G. Gibson and Mabel Robinson, which note is referred to in the argument as "Note No. 1." The other note was signed by J. H. Hawthorne and B. G. Gibson and is referred to in the argument as "Note No. 2." Both notes were due and payable. on or before one year after date. Prior to December 30, 1930, a number of payments were made to Mrs. Gowan all of which were credited upon Note No. 2. On the date last named a Mr. Dickson, as agent for Mrs. Gowan, presented both notes to J. H. Hawthorne at his office, demanding payment thereof. Miss Robinson was, and had been, employed as the private secretary of J. H. Hawthorne for a number of years, and was familiar with his business. A payment was made on the notes of $490.43, and a note given by B. G. Gibson to J. H. Hawthorne at an agreed value of $97.90 was accepted, making a total payment of $588.33. The agent placed a sufficient amount of this payment on note No. 2 as would pay it in full, the remainder, amounting to $72, being credited on note No. 1. After this J. H. Hawthorne and B. G. Gib-

son died. Note No. 1 was presented to the executrix of the estate of Hawthorne and was allowed in the balance due of $875.09. Suit was filed against the executrix and Miss Mabel Robinson by Mrs. M. J. Gowan seeking to recover judgment against the estate of J. H. Hawthorne and Miss Robinson.

No defense was made by the executrix, and Miss Robinson defended on the ground that the payment of $490.43 was made by her from her personal funds and intended by her to be applied to the note on which her signature appeared; that the same had been applied on another note upon which she was not obligated, contrary to her wishes and instruction.

A jury was waived and the case heard by the court sitting as a jury. The court found, upon conflicting testimony, that Miss Robinson signed the note on which her name appeared as an accommodation maker; that both Hawthorne and Gibson have since died, and that neither of the two notes given by them, the one sued on and the one executed by Hawthorne and Gibson only, had been presented as a claim against the estate of Gibson; that the note sued on was presented as a claim against the estate of Hawthorne. The court further found that at the request of Hawthorne, Miss Robinson paid from her personal funds the sum of $490.43, intending to have the payment applied on the note upon which her name appeared; that this payment was made with the knowledge of all the parties that the same was from her individual funds, and that it was to be applied to the note sued on; that on December 30, 1930, J. H. Hawthorne had paid $72 which, together with the payment of $490.43 and subsequent payments thereto left an amount due by Miss Robinson on the note sued on in the sum of $211.39. Judgment was entered against Miss Robinson for said sum and against the estate of J. H. Hawthorne in the sum of $884.90, it being adjudged that the estate was not entitled to the credit of the $490.43 item paid by Miss Robinson.

The evidence relating to the circumstances under which the payment of December 30, 1930, was made and the application of this sum to the payment of the note

is in conflict. Miss Robinson stated in substance that the two notes aggregating the sum of $1,800 were the personal obligation of Mr. Hawthorne and Mr. Gibson; that she received none of the proceeds of the notes and only placed her signature to the note upon which suit was brought as an accommodation to these gentlemen. She testified that she had no knowledge of payments made on the notes or how applied prior to December 30, 1930; that she was at the office of Mr. Hawthorne but not present in the room where demand upon Mr. Hawthorne was made by the agent for payment; that Mr. Hawthorne came to the room occupied by her and told her that Mr. Dickson was demanding that the note be paid, and asked if she had sufficient money to take care of it. She inquired the amount necessary to pay the balance due and gave her personal check on her savings account for the sum of $490.43 to be paid on the note which she had signed; that the note which was marked paid was placed in the files, but she did not learn that the payment she had made had not been applied to the note she had signed until afterward and at a time when the agent had gone away. Just when and how she ascertained the misapplication of her payment is not disclosed, but it appears that she made no complaint until after the death of Mr. Hawthorne when the note was presented to her and payment demanded. Then she inquired why her payment had not been applied to the note she had signed.

Testimony was given by Mr. Dickson to the effect that Miss Robinson was present when he made demand on Mr. Hawthorne; that the payment of $490.43 was not paid by check but that Miss Robinson went out and got the cash; that Hawthorne directed him to apply this payment on the note upon which he and Gibson were the only signers; that he did this and marked the note paid, and that Hawthorne delivered the same to Miss Robinson and told her what to do with it. He stated further that he applied all payments made on the notes according to the instructions of Mr. Hawthorne, and that practically all dealings with respect to the notes were between him and Mr. Hawthorne.

For reversal of the case, appellant insists that it is error to permit Miss Robinson to state that she signed the note sued on only as an accommodation-maker as her liability was fixed as joint-maker, and that the fact that she signed as an accommodation would not affect her liability. This evidence was not offered to change her liability, but as a circumstance tending to show why she made the payment by her personal check. This testimony was not incompetent for the purposes for which it was introduced and considered by the trial court, and tended to indicate Miss Robinson's intention of the application she desired to be made of the money she paid.

It is next insisted that, as the testimony of Dickson is undisputed to the effect that Hawthorne directed him to apply the payments of November 30, 1930, to the joint note of himself and Gibson, the application so made cannot be subsequently changed under the rule that where a debtor makes payment of a sum of money to one to whom he owes distinct debts, the credit shall be applied to the debt which he selects, and that the application by the debtor must be made before or at the time of payment. *Lazarus* v. *Friedheim,* 51 Ark. 371, 11 S. W. 518; *Briggs* v. *Steele,* 91 Ark. 458, 121 S. W. 754. This is the general rule, but is not one of universal application, being subject to a well-recognized exception, namely, that where several debtors are jointly indebted to a creditor on a given obligation and money is advanced by one with the knowledge of the creditor for the purpose of having such payment applied as a credit on the debt for which he is liable, his co-debtors cannot direct its application to the payment of a debt of their own on which the debtor advancing the money is not liable. *Farris* v. *Morrison,* 66 Ark. 318, 50 S. W. 693; *Harrison* v. *First National Bank,* 117 Ark. 260, 174 S. W. 553; *Jordan* v. *Bank of Morrilton,* 168 Ark. 117, 269 S. W. 53.

There is substantial evidence to support the finding of fact made by the court, namely, that Miss Robinson advanced the $490.43 with the intention that it be applied to the payment of the note sued on, and that this payment was made under circumstances which imputed to the payee knowledge of such intention. In *Jordan* v. *Bank*

*of Morrilton, supra,* the bank lent money to one Turner, with the understanding that a certain part of it should be applied to the payment of the debt of Turner to Jordan secured by a mortgage. Instead of applying the payment to that debt, Jordan applied it to the payment of a different debt due him by Turner. The court said: "If Jordan had notice that the bank had lent the money upon the understanding that a part of it should be applied towards the payment of his mortgage debt, he could not apply it to the payment of his unsecured debt, as against the bank, even with the consent of Turner. In this connection it may be stated that notice of facts and circumstances which would put a man of ordinary intelligence on inquiry is equivalent to knowledge of all the facts that a reasonably diligent inquiry would disclose. In other words, where a person has sufficient information to put him on inquiry, he shall be deemed to know what the inquiry would disclose."

In the case at bar the facts, as found by the trial court on substantial evidence, were that all parties knew that Miss Robinson had not in fact received any of the proceeds of the note on which she was a maker, and that when demand for its payment was made the agent of the payee received her personal check for $490.43. These were circumstances which would impute notice to the agent of the payee of the purpose for which the check was given and the application of it to a debt for which she was not obligated even with the direction of Hawthorne was unauthorized. Her money should have been applied to the payment of her own obligation.

The appellant insists, moreover, that Miss Robinson knew that her check was not applied as a credit to the note which she had signed, that she made no complaint until after both Gibson and Hawthorne had died, and that by her silence "appellant has been injured to the extent that both co-makers of note No. 2 have died, and the time for filing claims against the estate of B. G. Gibson has expired, and thus one source of payment eliminated." In support of this contention, the rule stated in 48 C. J. 654, is invoked which provides that "the debtor is estopped from questioning the application made by

the creditor wherein he receives an account or receipt applying payment in a certain way and fails to object'' (§ 105). The evidence is by no means conclusive as to when Miss Robinson first became aware that her check was applied to the payment of the note on which Hawthorne and Gibson only were the makers. A note was placed in the files in Hawthorne's office, but there is nothing in the evidence to show when Miss Robinson first discovered that this was not the note she had signed. There is nothing in the evidence to justify the inference that any injury has resulted to the appellant by reason of the silence of Miss Robinson. Mr. Gibson was the brother of appellant, and his note to Hawthorne for $250 given to Dickson, the agent of appellant, on November 30, 1930, was not paid and no effort was made to probate this note against Gibson's estate or any showing made that the note signed by him and Hawthorne could have been collected from him during his life-time or from his estate after his death. The appellant has the same right against the estate of Hawthorne that she had prior to the time of payment, and the trial court actually gave her judgment for the full amount of the balance due on the two notes against the estate. In fact, there is no evidence to show that the position of the payee has been altered or prejudiced in any way by reason of the silence of Miss Robinson.

The appellant contends in the last place that, should it be decided that note No. 1 be credited with the payment of the $490.43, the item of $72, credit on the note December 30, 1930, ought to be stricken therefrom because that item was a part of the $490.43 and to allow both would be giving Miss Robinson credit twice. We do not think the evidence justifies the conclusion that the $72 credit was a part of the $490.43 check given by Miss Robinson, but rather that it was derived from the supposed value of the Gibson note which was accepted by the agent in part payment. In any event, that credit was placed upon note No. 1 by the payee's agent, and it sufficiently appears that the agreed value of the Gibson note was more than sufficient to justify the credit of $72. The

testimony of Mr. Dickson, the agent of the payee, as to the amount of the payment received on November 30, 1930, is vague, and in our opinion there is some evidence to support the conclusion reached by the trial court as to this particular item.

On a consideration of the whole case, we conclude that the judgment of the trial court should be, and is therefore affirmed.

BAKER, J., disqualified and not participating.