The White River Production Credit Association
*v.* Griffin.

4-5430                                128 S. W. 2d 701

Opinion delivered April 24, 1939.

*Kaneaster Hodges* and *Gerard N. Byrne,* for appellant.

*Sam M. Bains,* for appellee.

McHANEY, J. Appellant brought this action against appellee Griffin, as maker, and the other appellees, as indorsers, to recover the balance due on a promissory note. On April 24, 1937, appellee Griffin executed and delivered to appellant his promissory note for $1,000, due and payable December 1, 1937, with interest from date to maturity at 5 per cent. and thereafter at 8 per cent. per annum, which said note was indorsed by the other appellees, Koettel and Heffington, and further secured by a chattel mortgage on certain personal property and seventy-five acres of rice to be planted. Said note, in addition to a provision waiving presentment for payment, notice of nonpayment, etc., on the part of the maker and indorsers thereof, contained this statement: ''This note is secured by a chattel mortgage on property therein more specifically described,'' etc. The mortgage contained a provision that it was given ''for the purpose of securing the payment of said debt and the note evidencing the same, and all renewals and extensions thereof, and all additional loans and advances which may hereafter be made by the mortgagee, its successors [or] assigns, to the mortgagor, whether made before or after the maturity of the note described herein, and during the life of this mortgage, whether or not evidenced by note or notes, and any and all other present or future liabilities of the mortgagor to the mortgagee. . . .'' Another provision in said mortgage is contained in the defeasance clause, providing that if the mortgagor shall pay said debt, ''together with any and all other sums or advances paid, furnished or advanced hereunder'' by it, then said conveyance or mortgage should be void, otherwise to be in full force and effect. Another provision is that if it should assign this mortgage and said note to the Federal Intermediate Credit Bank of St. Louis, Missouri, and ''shall make additional advances to the mortgagor, or shall pay or incur sums or obligations hereunder for the protection or preservation of said security, such additional advances, sums and obligations shall be secured by the lien of this mortgage, although—not assigned to the Federal Intermediate Credit Bank of St. Louis; provided, however, that if such advances, sums and obligations are

not assigned to the Federal Intermediate Credit Bank of St. Louis, then any note or notes or other obligations herein secured held by such Federal Intermediate Credit Bank of St. Louis shall have priority over any other notes or liabilities secured hereby in so far as concerns participation in the proceeds of any foreclosure sale hereunder, and the priority of said assignee shall extend and operate to and throughout all transactions, proceedings or controversies with respect to the security herein conveyed, and said assignee shall be entitled to payment in full before any of the other claims herein secured shall be paid.

In addition to the $1,000 loaned appellee Griffin, appellant made other advances to him to enable him to harvest, haul, store and market his rice crop of 90 acres instead of 75, for which he executed to it three other notes dated November 1, November 6, and November 23, 1937, aggregating $745, and which appellees Koettel and Heffington refused to indorse because they did not wish to be liable for more than $1,000. Koettel was Griffin's landlord and he executed and delivered to appellant his waiver of landlord's lien for rent, which was attached to the mortgage and recites: "Such waiver to extend to and cover the amount now due under and secured by said mortgage or which may be hereafter secured thereby under the terms thereof, and I/we hereby waive the right to a marshalling and consent to the collection of said mortgage out of any and all said crops."

The rice crop was thereafter harvested and sold. On January 22, 1938, appellee Griffin made a payment to appellant which it applied first to the retirement of the additional loans represented by the three notes executed in November, and the remainder, $108.35, to the original $1,000 note. Thereafter, three other payments were made on said note, the last being on June 24, 1938, which left a balance, exclusive of interest, of $564.99. On August 15, 1938, the date of the filing of this suit, there was a balance due thereon, including interest, of $643.31.

Appellee Griffin made no defense to the action. The other appellees defended on the ground that the note

which they indorsed had been paid. The case was tried before the court, a jury being waived, and it found that appellant was required by law to apply the first proceeds of the mortgaged rice crop and other security to the $1,000 note on which Koettel and Heffington were indorsers before making any application of said proceeds on the three notes, representing advances. Judgment was rendered against Griffin for $643.31 with interest from August 15, 1938, at 8 per cent. per annum, and in favor of Koettel and Heffington.

We think the court erred in discharging Koettel and Heffington. It is undisputed in this record that Griffin instructed appellant's agent, Mr. Harris, to "take up the additional advances out of the first rice sold." Griffin did not remember this conversation, but did not deny that it occurred. It is also undisputed that neither Koettel nor Heffington undertook to direct application of payments, although Heffington says that, in a conversation with Harris, he suggested that he thought the proceeds should "go to the first instead of the last" or that the money "ought to be applied at the bottom and not at the top." The general rule for application of payments is stated in the second headnote to *National Surety Co.* v. *Southern Lumber & Supply Co.*, 181 Ark. 105, 24 S. W. 2d 964, as follows: "The right to apply payments exists only between the original parties, and no third person, such as guarantor, surety, indorser or the like, has any authority to insist on an appropriation of the money in his favor where neither the debtor nor the creditor has made such appropriation."

And the court further stated in this case the rule often announced that the debtor at the time of making a payment has the right to direct the application. If he fails to direct such application, the creditor has the right to make it, "and the third person or surety company has no right to be heard, and no right to direct how the payments shall be applied." Quotations from 21 R. C. L. 107-8 and 30 Cyc. 1250-51 are given to support the rule that the right to apply payments is strictly one existing between the original parties, and not to persons

secondarily liable. In an exhaustive note to *Wait* v. *Homestead Bldg. Assn.*, 21 A. L. R. (W. Va.) 704, it is said: "It is well settled that a surety or guarantor cannot in the absence of an agreement or of special equity in his favor, direct or control the application by the principal and the creditor, or either of them, of payments made by the principal from his own funds; in other words, the mere fact that one of the debts in question is covered by the obligation of a guarantor or surety does not defeat the right of the principal debtor in the first instance, or, in case of his failure, the right of the creditor, to apply the payment to another debt due from the principal."

In this case there was no "agreement" that the proceeds of the rice crop be first applied to the note indorsed by Koettel and Heffington and it (the note) specifically notified them it was secured by a mortgage which also secured other advances that might be made to Griffin, as it stipulated that "failure to pay the principal or interest as herein provided this note and all indebtedness secured by said mortgage may," etc. There are no special equities in their favor—no special pledge to a particular debt, as the mortgage, to their constructive, if not actual, knowledge secured the particular note and all other advances. The rule is a little more succinctly stated in the same annotation at page 720, where it is said: ". . . the creditor may, in the absence of a special pledge to a particular debt, apply the proceeds of collateral to debts of the principal on which the surety or guarantor is not bound, in preference to debts on which he is bound, assuming that both classes of debts are covered by the collateral." As stated above, there was no "special pledge to a particular debt" in said mortgage. The $1,000 note stood on a parity with the other advances.

Appellees cite and rely on *Jordon* v. *Bank of Morrilton*, 168 Ark. 117, 269 S. W. 53; *Herweigh* v. *Hall*, 172 Ark. 1148, 292 S. W. 97; and *Gowan* v. *Robinson*, 191 Ark. 356, 86 S. W. 2d 19. We think these cases are not in point. In the Jordon Case, after stating the general rule, as above announced, "that the right of appropria-

tion of payments belongs exclusively to the debtor and creditor, and that no third person can control or be heard for the purpose of compelling a different appropriation from that agreed on by them," the court said: "There is a well-recognized exception to this rule, and that is, if the creditor had notice that money had been furnished his debtor upon an understanding that it was to be applied towards the payment of a particular debt, it could not be appropriated to the payment of another debt. Here, according to the finding of the chancellor, the bank lent the money to Turner with the express understanding that a specified part of it should be applied towards the payment of a debt of Turner to Jordon secured by a mortgage upon the same land which he had mortgaged to the bank. If Jordon had notice of these facts, he would not be permitted, even with the consent of Turner, to misapply it. *Harding* v. *Tifft*, 75 N. Y. 461. In short, if Jordon had notice that the bank had lent the money upon the understanding that a part of it should be applied towards the payment of his mortgage debt, he could not apply it to the payment of his unsecured debt as against the bank, even with the consent of Turner." In other words, where a third person advances funds to a debtor to be applied on a particular debt, the creditor, with knowledge of the purpose of such advancement, cannot make a different application. The other cases cited make similar exceptions to the general rule. These are some of the "special equities" referred to in the first above quotation from 21 A. L. R.

It is perfectly manifest that it was the purpose of all parties, appellant and appellees, that Koettel and Heffington should indorse said $1,000 so as to give appellant additional security for said note over and above the property covered by the mortgage. Such being the purpose of the indorsement, it would be frustrated and rendered valueless to require the application of the proceeds of the mortgaged property first to the discharge of the indorsed note, for if all or a substantial part of such proceeds should be required to discharge the indorsed note, leaving some of the unindorsed notes unpaid, the creditor would have no security for their payment. The Supreme

Court of Florida expressed the same view in *Consolidated Naval Stores Co.* v. *Wilson,* 82 Fla. 396, 90 So. 461, 21 A. L. R. 681, as follows:

"If it was the purpose of the creditor to take additional security in the form of an indorsement of some of the notes, and the indorser met the creditor upon that proposition, it would be inequitable and manifestly unjust to require the application of the proceeds of the mortgaged property to be applied first to the indorsed notes, for the whole purpose of the additional security would be destroyed by such application."

Appellees Koettel and Heffington, having indorsed said note for the purpose of giving appellant security in addition to the mortgaged property, cannot be permitted to destroy the very purpose of their indorsement and escape the consequences of their own voluntary act.

The judgment will, therefore, be reversed, and judgment will be entered here against said appellees for $643.31 with interest at 8 per cent. from August 15, 1938, together with costs. It is so ordered.