CHOCTAW, INC. *v.* GREAT AMERICAN INSURANCE CO.

5-2853                                    363 S. W. 2d 410

Opinion delivered January 7, 1963.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellant.

*John M. Lofton, Jr.,* for appellee.

SAM ROBINSON, Associate Justice. The Benton Plumbing Company, hereinafter called Benton, contracted with the City of Sparkman to do certain work and furnish materials in the construction of a water and sewer system. Appellee, Great American Insurance Company, made Benton's performance and payment bond. Benton bought from appellant, Choctaw, Inc., materials used on the job. Money paid by Sparkman to Benton and in turn paid by Benton's check to Choctaw, was credited to Benton's account, but not all of it to the payment of the debt for the materials furnished for the Sparkman job.

Benton ran into financial trouble and Great American had to take over and complete the job. Choctaw filed this suit against Great American, asking judgment on the performance and payment bond in the sum of $3,963.77 as the balance due for materials which had been furnished Benton for the Sparkman job. Great American answered and set up the defense that all of the account except $546.86 had been paid. The case was tried before the court sitting as a jury. From a judgment in favor of Great American, Choctaw has appealed.

The crediting by Choctaw of payments by Benton to purchases other than those on the Sparkman job came about in this manner: Benton had purchased materials from Choctaw for many years prior to the time that Choctaw was furnishing materials on the Sparkman job, and during the time the Sparkman job was in progress, materials were also furnished to Benton on other jobs.

On December 21, 1959, Benton sent to Choctaw a check in the sum of $3,871.83. There was nothing said about the job to which it should be credited. Choctaw inquired of Benton as to how the payment should be

applied. Benton replied, "Just apply check to our account balance." Choctaw, therefore, applied the check to the oldest items ordered by Benton. On February 7, 1960, Benton sent Choctaw a check in the sum of $1,-534.73 without any notation as to how it should be credited. Again, Choctaw made inquiry as to how the payment should be applied and was told by Benton to apply it to the plumbing account. When subsequent checks in the sum of $1,250.00 and $1,000.00 were received with no designation of how the payments should be applied, Choctaw applied them to Benton's plumbing account. All of these payments were with money paid to Benton by Sparkman.

This is the issue: Assuming that there is substantial evidence to support a finding that Choctaw knew, or by the exercise of ordinary care should have known, that payments made by Benton were with money Benton had received from Sparkman, was Choctaw legally bound to credit the payments to the Sparkman job?

To sustain the judgment, appellee relies on the cases of *Longbell Lumber Co.* v. *Auxer,* 221 Ark. 672, 255 S. W. 2d 163, and *Wells* v. *Planters Lumber Co.,* 230 Ark. 570, 327 S. W. 2d 1, but we do not think those cases are controlling here. Both of those cases were in Chancery Court and involved the proposition of the plaintiff lumber companies seeking to establish liens on the defendants' homes where the lumber companies had improperly applied payments made by contractors. In the circumstances of both of those cases it would have been inequitable for the Court to have enforced a lien. Moreover, in those cases the property owners who had paid the money to the contractors were parties to the litigation and strenuously objected to the lumber companies having failed to apply the payments to the debt against the property; but here, Sparkman is not a party to this litigation and has made no complaint as to how the payments were applied.

Ordinarily, the debtor has a right to direct the application of payments. *Harrison* v. *First National Bank of Huntsville,* 117 Ark. 260, 174 S. W. 553. But, as pointed out in *White River Production Credit Ass'n.* v. *Grif-*

*fin,* 198 Ark. 249, 128 S. W. 2d 701, there is an exception to this rule, and that is if the creditor had notice that the money had been furnished his debtor upon an understanding, expressed or implied, that it was to be applied toward a particular debt, it could not be appropriated to the payment of another debt. Here, there is no showing that Sparkman made payments to Benton with the expectation or agreement, expressed or implied, that Benton would use the money to pay for the materials furnished on the Sparkman job. In fact, it would appear that Sparkman was not concerned with what Benton did with the money since it was fully protected by the bond furnished by appellee insurance company.

Assuming that Sparkman could have complained about the payments not being credited to its job, it does not follow that the bonding company can complain. In the above mentioned White River Production Credit Ass'n. case, the Court quoted with approval as follows from *National Surety Co.* v. *Southern Lumber & Supply Co.,* 181 Ark. 105, 24 S. W. 2d 964: "The right to apply payments exists only between the original parties, and no third person, such as guarantor, surety, indorser or the like, has any authority to insist on an appropriation of the money in his favor where neither the debtor nor the creditor has made such appropriation." The Court further said in the National Surety Co. case, "While the authorities are not entirely in accord, third persons, such as guarantors, sureties, indorsers, and the like, secondarily liable on one of several debts, cannot control the application which either the debtor or the creditor makes of a payment, and neither the debtor nor the creditor need apply the payments in the manner most beneficial to such persons. This rule applies as well to a corporation engaged in the business of writing surety bonds for a compensation, as to an ordinary accommodation surety."

The payments were credited by Choctaw as directed by Benton; Sparkman has made no complaint. In the circumstances, Great American has no right to direct a change in the application of the payments.

Reversed.