## GARDENHIRE V. SMITH.

LANDLORD AND CROPPER:   *Cropper's rights upon being discharged.*

A contract between one to furnish land, team and tools, to make a crop, and another to work the land and make the crop for a specified portion of it, does not constitute a partnership, but simply fixes a rule whereby to compensate the laborer for his services; and if the former discharges the laborer without cause before the crop is made and gathered, the laborer may then sue and recover the value of his services to that time, or he may wait until after the time for gathering the crop, and then sue and recover the value of his agreed portion of the crop, less what he had an opportunity to make by like service after his dismissal.

Gardenhire v. Smith.

APPEAL from *Lawrence* Circuit Court.

Hon. R. H. POWELL, Circuit Judge.

*John K. Gibson*, for appellant:

1. The law presumes every man capable of performing such contracts as he undertakes, in a proper manner. *7 Ark., 435.*

2. The sixth instruction was erroneous. The value of a growing crop is too remote and uncertain, etc. (*1 Sedgwick on Dam., 126.*) It can not be proved that a crop would have been made; there are too many contingencies. (*Ib., p. 133, note.*) Appellee could only recover the value of the crop at the time of the breach, if anything. *Ib., 133, note; 134, note, and 269; 73 N. C., 440; 34 Ark., 188,* and cases cited.

3. There should have been deducted from any damages found, what plaintiff earned or might have earned during the season. *3 Greenleaf, secs. 51, 55, 56; 4 Eng. Rep., p. 401, et seq.*

ENGLISH, C. J. The complaint in this case was filed in the office of the Clerk of the Circuit Court of Lawrence County on the third, and the writ issued on the eleventh of May, 1880, returnable to the September term following. The substance of the complaint was, that the plaintiff, Samuel S. Smith, about the — day of ——, 1880, made and entered into a verbal contract with defendant, Benjamin L. Gardenhire, in Lawrence County, on the terms and conditions, tenor and effect following:

Defendant agreed and bound himself by said contract with plaintiff, that he would furnish him about seventeen acres of good tillable land on his home farm, in said county, for the purpose of making a crop of corn and cotton for the year 1880, and to furnish plaintiff all necessary tools,

harness, feed and team with which to work and cultivate said crop, on said land, in consideration that plaintiff would take charge of said land and cultivate said crop for said year, and give to defendant one-half of all the corn and cotton grown and cultivated on the said land for said year. That in pursuance of said contract, plaintiff entered into possession of said land assigned him by said defendant, on or about the — day of ——, 1880, and with the team, tools, feed and harness furnished him by defendant, began the planting and sowing said land according to the terms of said contract, endeavoring in good faith on his part, to comply with each and every obligation contained therein, until the — day of ——, 1880.

That on the day last named, plaintiff had broken nearly all of his said twelve acres of cotton land, prepared the same for seeding, and had seeded about six acres of the same, and had finished planting his corn all according to his said contract; and on said day he was pursuing his work in seeding said cotton land, when defendant came and demanded his team so turned over to plaintiff, and took said team away from plaintiff in violation and total disregard of his said obligation to plaintiff, and still refuses to surrender the same, that plaintiff may proceed with his crop.

Plaintiff alleges that he has in every way complied with said contract, on his part with defendant, but that the crop season having so far advanced as to leave it beyond the reach of plaintiff to get land and team anywhere else, and having no land or team of his own with which to cultivate a crop for said year, he is damaged by said defendant's acts and conduct aforesaid in the breach of his said contract with plaintiff to the sum of four hundred dollars.

Plaintiff further alleges that his expenses and trouble of moving to defendant's farm under said contract, and the work he has done in pursuance thereof, are worth the sum

of two hundred dollars; and that his half of said crop if he had been permitted to cultivate it, would have been reasonably worth the sum of four hundred dollars, and that by the acts of defendant aforesaid, he is precluded and entirely prevented from making said crop for said year, to his damages in said sum of four hundred dollars.

Wherefore he prays judgment for said sum of four hundred dollars.

Defendant, in his answer, admitted that he entered into a verbal contract with plaintiff as stated in the complaint, but alleged that by the terms of the contract it was expressly stipulated that plaintiff was to work under the supervision and direction of defendant, and perform his part of the contract in a farmer-like manner, and take good care of the team or teams furnished by defendant. Denies that plaintiff complied with each and every obligation imposed upon him by the contract. Denies that he took good care of the team or teams furnished by defendant, as he had obligated himself to do; and alleges that such failures by plaintiff first caused a breach of the contract. Denies that plaintiff was damaged in the sums alleged in the complaint. Alleges that defendant performed each and every part of the contract that was incumbent upon him, and that plaintiff failed, refused and neglected to cultivate said land in a farmer-like manner, and to take good care of the team as he had obligated himself to do. That the treatment by plaintiff of the team furnished him by defendant, became so intolerable that defendant was compelled to take his horse from plaintiff or suffer increased damages by allowing him to retain possession and control of the same.

That owing to the unfarmer-like and negligent conduct of plaintiff in failing and refusing to cultivate the land as he had agreed and undertaken to do, defendant could not

get his land cultivated for the year 1880, and would get no rents therefrom.

That by reason of plaintiff's failure to comply with the contract in caring for said team, and to cultivate said land in a farmer-like manner under the supervision and instruc- tions of defendant, as he had obligated himself to do, defendant was damaged in the sum of $75, for which he prayed judgment, etc.

The answer was filed at the September term, 1880, and the case was tried at the March term, 1881, and the verdict and judgment were in favor of plaintiff for $80 damages; a new trial was refused defendant, and he took a bill of exceptions and appealed.

On the trial, evidence was introduced conducing to prove that about the last of April, 1880, when plaintiff had planted four or five acres in corn, which had come up, and broken most of his cotton land, and seeded part of it, defendant took away from him the horse which he had furnished him, under the contract to make the crop, and refused on demand, to return it to him or furnish him an- other. That plaintiff was unable to procure a horse and made no crop.

Plaintiff testified that before he was deprived of the horse, he had done work worth $50 ; another witness tes- tified that his work was worth $75; and another, that it was worth from $75 to $100.

Plaintiff also testified that he took good care of the horse, treated him well, and worked under the directions of defendant when he gave any. That he complained that the corn was too thick, and plaintiff thinned it, etc.

Defendant testified that he took the horse from plaintiff because he abused him, and was breaking him down ; that he bore the plow on its point, and rode upon it; planted his corn too thick and refused to thin it, etc.; and it was better to lose the crop than the horse, etc.

There was evidence conducing to prove that the cotton land would have produced that year 800 pounds of seed cotton to the acre, worth two and a half cents a pound, and that the corn land would have produced from twenty-five to thirty bushels per acre, worth forty cents a bushel.

Plaintiff testified that when deprived of the horse, it was too late in the season for him to contract to make a crop elsewhere, and he had no land, tools or team. That he could get but little employment, and made only twelve dollars during the remainder of the year, and that he earned in hoeing time.

Other witnesses testified that labor was in demand during the cotton picking season, and worth from seventy-five cents to one dollar per day.

The above are the leading features of the evidence.

No doubt the jury found, from the conflicting evidence, that defendant violated the contract in depriving plaintiff of the horse, thereby preventing him from making the crop, out of which he was to be compensated for his labor.

1. The main question of law in the case is, what was the measure of plaintiff's damages, if defendant wrongfully, and in violation of the contract, deprived him of the horse, and thereby prevented him from making the crop?

The sixth instruction given by the court to the jury against the objection of defendant, and the giving of which was made ground of the motion for a new trial, relates to the measure of damages, and follows:

"The jury are instructed that if they find from the evidence that the defendant agreed, in consideration of the plaintiff's services in cultivating his land, to give to the plaintiff one-half of the crop when matured and gathered, and that the cultivation, maturing and gathering of said crop was prevented by the wrongful act of the defendant in depriving the plaintiff of the team which he was to fur-

nish, and that the plaintiff had complied, up to the time of the refusal to furnish the horse, with his contract, and was still willing to comply with it, they will find for plaintiff in a sum equal to the value of one-half of said crop at maturity, less the necessary expense of gathering the same, and such amount as the plaintiff made, or could have made in the same community for services of similar character to that agreed to be performed by him in the cultivation of said crop, if any."

This court has decided that where a land owner agrees to furnish a laborer with land, team, implements, etc., and the laborer agrees to cultivate the land for a third, or half of the crop, this does not constitute a partnership, but simply establishes a rule whereby the laborer is to be compensated—that is, his wages are to be paid in the part of the crop agreed on instead of money.   *Christian v. Crocker et al., 25 Ark., 330; Burgie v. Davis, 34 ib., 179; Sentell v. Moore, ib., 690.*

In this case when defendant took the horse from plaintiff, and refused to return it, or to furnish him any team to cultivate the land and complete the crop, he, in effect, discharged him from further service; and such was, no doubt, his purpose, as he complained that plaintiff was not only abusing the horse, but refusing to work as he directed. The jury, however, found in effect, from the conflicting evidence on this point, that plaintiff was discharged without fault.

In *Clancey v. Robertson, Mills' Constitutional Rep. (S. C.), 428,* the action was assumpsit to recover overseer's wages. The contract was that plaintiff was to live with defendant and in his house; defendant was to find one negro, and everything necessary for farming, and the plaintiff was to manage and work in the crop, and was to be allowed one-fourth of the crop for his services.   Plaintiff planted be-

tween twenty and thirty acres in corn, potatoes and peas, and in June, when corn was waist high, defendant drove him off without just cause. Defendant insisted that plaintiff was only entitled to recover one-fourth of the value of the crop at the time he was discharged ; but the jury, upon the evidence, found a verdict equal to one-fourth of the supposed value of the crop when it should be gathered. It was submitted to the Court of Appeals, as ground for a new trial, that plaintiff was entitled to no more than one-fourth of the value of the crop at the time he was turned away; but the court decided that to be no ground for a new trial, and that in such case plaintiff was entitled to have one-fourth of the value of the crop, to be estimated not as it stood when he was dismissed, but when it was fully made.

At what time the action was brought, whether immediately after plaintiff was discharged, or at the end of the year, is not stated in the report of the case.

It is well settled that where a servant is employed for a particular term, at stipulated wages, and his employer discharges him without cause, before the expiration of the term, he may elect to treat the contract as continuing, keep himself in readiness to perform it on his part, and after the expiration of the term, sue his employer on the contract for the whole of the wages due him by its terms. This is upon the principle that readiness to perform, and tender of performance, is equivalent to performance of the contract on his part. *2 Smith's Leading Cases (Hare & Wallace), notes to Cutter v. Powell, 39; Costigan v. Mohawk and Hudson R. R. Co., 2 Denio, 609; Jones v. Jones, 2 Swan., 605; Fowler & Prout v. Armour, 24 Ala., 194; Hendrickson v. Anderson, 5 Jones' Law R. (N. C.), 246; Fair v. Goodwin, 35 Ark., 109.*

But in such action the authorities agree that defendant may prove in mitigation of damages that after the dismissal of plaintiff, and during the remainder of the time,

he received, or was offered and might have obtained, wages in similar employment.

*Costigan v. Mohawk and Hudson R. R. Co.*, above cited, is a leading case illustrating both of the above rules.

But the plaintiff is not obliged to wait until the expiration of the period of employment, to bring his suit. He may treat his dismissal as a rescission of the contract by defendant, and sue immediately for damages for its breach, and in such action, as a general rule, the measure of his damages is the value of his services to the time of his dismissal. *2 Smith's Leading Cases, sup; 2 Chitty on Contracts, 11 Am. ed. p. 855.*

*In Booge v. Pacific Railroad, 33 Mo., 215*, the court said : " A servant or agent wrongfully dismissed may immediately bring his action for a breach of the contract in dismissing him, or he may wait till the end of the term for which he was hired, and then sue for his entire wages, and in many cases it has been contended that he may treat the contract as rescinded, and sue on a *quantum meruit* for the work actually performed. But he must make his election, and if he elects to sue for the breach before the termination of the period for which he was hired, and recovers, such recovery will be a bar to any subsequent action upon the same contract."

So in *Ream v. Watkins, 27 Mo., 516*, it was held that where an employé, wrongfully discharged before the completion of his term of service, brings an action before the expiration of such term, to recover damages for the breach of the contract, it is error to rule that the measure of damage is the contract price of his services for the whole term.

*In Brinkley v. Swicegood, 65 North Carolina, 626*, it was decided that a person hired for one year, who was wrongfully dismissed before the expiration of the year, is not

required to wait till the end of the year, but can sue at once, and is entitled to recover such damages as he has sustained by such wrongful dismissal. He may treat the contract as rescinded, and recover upon *quantum meruit*.

In this case the plaintiff brought his action in a few days after he was, in effect, dismissed by defendant from his service. He could only recover, according to the above authorities, in such action, the value of his services to that time, as upon a *quantum meruit*. But the court, in the above instruction, attempted to apply the rule which is applicable to a case where suit is brought upon the contract, after the expiration of the period of service.

The principles announced in *Walworth v. Poole, 9 Ark., 394*, were correct, but the court failed to notice the distinction between actions brought upon dismissal, and those brought after the expiration of the agreed term of service.

For the error of the court in giving the above instruction, the judgment must be reversed and the cause remanded for a new trial.