WYATT LUMBER & SUPPLY COMPANY, INC. v. HANSEN.

4-6121                                               147 S. W. 2d 366

Opinion delivered December 9, 1940.

*Mahony & Yocum* and *G. E. Snuggs,* for appellant.

*Sam Goodkin,* for appellee.

SMITH, J. On August 25, 1938, Otto Hansen entered into a building contract with M. Friedman to remodel the latter's residence in the city of El Dorado. This contract was upon the consideration of $2,400, to be paid after the completion of the work. Friedman resided in the house to be remodeled, and continued to live in it while the remodeling work was in progress. During the progress of the work Friedman advanced Hansen $200, but made him no other payment. The contract did not require this payment until the work was completed.

The contract detailed the work to be done, but provided that "The owner may, at any time during the progress of the work, alter, or change, or subtract from or add to the plans and specifications, without violating the contract, or the terms thereof, provided, that, if the cost of the work be increased by any such change or alteration, the amount of such increase shall be added to the contract price herein agreed upon and paid upon the completion of the work." Various changes and additions were made to the plans and specifications, but, under the provisions of the building contract above copied, they became a part of the contract.

While the parties were operating under this contract, the Wyatt Lumber & Supply Company, Inc., hereinafter referred to as the Wyatt Company, furnished the build-

ing materials required. These amounted to the sum of $1,267.36. Hansen, the contractor, was unable to meet his labor payrolls, and the Wyatt Company furnished Hansen money for this purpose in the sum of $1,263.32. The advances of money and the sales of materials occurred between the dates of September 19th and December 3rd, 1938, on which last-named date Hansen quit the job.

Included in the extra work which Hansen was directed to do, and agreed to do, was the erection of a new garage and the construction of a concrete driveway leading thereto, as the place of the erection of the new garage rendered the driveway leading to the old garage unavailable. The floor of the old garage was demolished and the garage was rendered unusable, and was not replaced by Hansen, nor did he construct the new driveway.

After Hansen quit the job, Peters & Cramer, building contractors, were employed to make an estimate of the cost of the unfinished work and the cost of the extra work not called for in the original contract which Hansen had done. This estimate amounted to $469.52, and represented work which Hansen was expected and had agreed to do and to be paid the cost of any part thereof not included in the original contract, in addition to the $2,400.

About January 1, 1939, a leak developed in the roof valley, and the manager of the Wyatt Company testified that the Friedmans called upon that company to complete the job Hansen had contracted to perform. The roof was repaired, at a cost of $14.37, of which $8.37 was for materials, and $6 for labor.

Upon the allegation that this work was a continuation of the Hansen job, being a repair upon a job otherwise substantially completed, the Wyatt Company filed suit to collect this $14.37 item, together with its bill for materials furnished and for labor paid for the account of Hansen. All of this account, except the item of $14.37, had been charged on the books of the Wyatt Company against Hansen, and, for identification, was referred to on the books as the "Friedman Job."

Hansen had left the State, and constructive service by the publication of a warning order was had against

him. Friedman and his wife were served with summons. In addition, a writ of garnishment was issued against Friedman, in which it was sought to impound any balance due by him to Hansen. Interrogatories were propounded to Friedman, in which he was required to answer what money, if any, he owed Hansen. Friedman filed an answer containing a general denial of indebtedness, in which he reserved the right to answer in greater detail, and thereafter he filed an amendment to his answer in which he set out the substance of the defense which he interposed at the trial.

There was no denial of the garnishee's amended answer, as required by § 6125, Pope's Digest. It was held in the case of *Beasley* v. *Haney,* 96 Ark. 568, 132 S. W. 646, that this denial must be in writing, and that the answer of a garnishee must be taken as *prima facie* true, and, if not controverted, or if no issue is taken thereon, it will not be presumed to be absolutely true. And in the case of *Southwestern Gas & Electric Co.* v. *W. O. Perkins & Son,* 185 Ark. 830, 49 S. W. 2d 606, it was said that unless there was a denial of the garnishee's answer entered of record, the presumption as to the truth of its allegations becomes conclusive. See, also, *Hoxie Lumber Co.* v. *Chidester,* 184 Ark. 612, 43 S. W. 2d 69; *Bank of Shirley* v. *Bonds,* 178 Ark. 1079, 13 S. W. 2d 816.

Another reason why relief by way of garnishment may not be awarded the Wyatt Company is that the building contract was not fully completed. It is argued that there had been a substantial compliance with the original written building contract. But the court made a specific finding to the contrary; and we cannot say that this finding is contrary to the preponderance of the evidence. But, even so, by the terms of the written contract, additions thereto became a part thereof.

In Friedman's brief, twelve items are enumerated in respect to all of which it is insisted that the contract was incomplete, but, if performed at all, had not been performed in a "good and workmanlike manner," as the contract required should be done. The most important of these relates to the failure to install a red clay tile

roof, the cost of which would be $500. Other items relate to faulty construction, which the Wyatt Company insists could be remedied at small cost.

The building to be remodeled was an old one, and the Wyatt Company insists that the performance of the contract in a "good and workmanlike manner" relates to the manner of performing the remodeling, and not to the sufficiency of the job after it is completed. But there are several, at least, of these items, embraced in the original contract, which the undisputed testimony shows were improperly constructed, and will require replacement. The owner could demand that this be done before being required to pay the contract price for the work.

There is an extended annotator's note to the case of *McKendall* v. *Patullo,* 52 R. I. 258, 160 Atl. 202, 82 A. L. R. 1111, and the annotator cites many cases in support of the following note: "It is held that, in order that a garnishee may be charged, there must be an existing debt at the time of the service of the garnishment, and not a mere conditional or contingent liability. So, in the case of a construction contract, where the employer is not to become indebted to the contractor until performance in all particulars, there is no indebtedness owing to the contractor which may be reached in a garnishment proceeding until the terms of the contract have been performed."

Here, as has been said, the contract price for the work was payable "Upon the completion of the work."

In the case of *Medley* v. *American Radiator Co.,* 27 Tex Civ. App. 354, 66 S. W. 86, it was said: "In order for a fund or liability to be subject to garnishment, there must be no condition precedent, no impediment of any sort between the garnishee's liability and defendant's right to be paid. . . . We can imagine no liability subject to more contingencies than the balance which may become due on an uncompleted building contract entire in its nature." To the same effect see, also, the cases of: *Cunningham Lumber Co.* v. *New York, N. H. & H. R. Co.,* 77 Conn. 628, 60 Atl. 107; *White* v. *Hobart,* 90 Ala. 308, 7. So. 807; *Krogman* v. *Rice Bros. Co.,* 241 Mass. 295, 135 N. E. 161; *National Exchange Bank* v. *Solberg,* 175

Minn. 436, 221 N. W. 677; *H. A. Grimwood Co.* v. *Capitol Hill Bldg. & Const. Co.,* 28 R. I. 32, 65 Atl. 304; *Town of Gastonia* v. *McEntee Peterson Engineering Co.,* 131 N. C. 359, 42 S. E. 857.

The court below dissolved the writ of garnishment; and we think no error was committed in this respect.

It is insisted that if the Wyatt Company may not recover their advances to Hansen through the garnishment proceedings, they should be accorded that right by way of subrogation.

The court below found—and the undisputed testimony sustains the finding, that the Wyatt Company, as materialman, failed to give the owner, Friedman, the ten days' notice required by § 8876, Pope's Digest, and also failed, as materialman, to file their itemized statement of account with the Clerk of the Circuit Court within ninety days, as required by § 8881, Pope's Digest, "but that plaintiff commenced this suit for a lien on March 21, 1939, which the court finds was more than ninety days after the last article of material was furnished by plaintiff to the said contractor, Otto Hansen."

We do not think that the request of the Friedmans that the Wyatt Company repair the leak in the roof, even though accompanied by the threat to sue for damages if this were not done, operated to substitute the Wyatt Company as original contractor, nor to subrogate it to the rights of Hansen to a lien under his contract. Hansen's lien had not then been (nor has it ever been) perfected, and it could not be thus assigned.

In the case of *Superior Lumber Co.* v. *National Bank of Commerce,* 176 Ark. 300, 2 S. W. 2d 1093, it was said: "The lien for materials is purely a creature of the statute, and while it is assignable under our statute, the right to prosecute a mechanic's lien is not assignable. Such liens must be perfected before they can be transferred or assigned." As Hansen has never perfected his lien, it cannot be said that it has been assigned.

The Wyatt Company's position is that of a creditor who had sold materials and had loaned money to a contractor who might have claimed a lien, but had not done

so. That the transaction, so far as the money advanced is concerned, was a mere loan to Hansen is shown by the fact that interest at the rate of five per cent. was charged. In other words, the Wyatt Company might have protected itself by filing a lien as provided and authorized by statute, but it did not do so. Now, however, when a recovery is sought by way of subrogation and by the garnishment proceeding, its position is that of any other creditor.

The court below awarded judgment for the repair of the roof, and gave a lien for the cost thereof, but other relief was denied.

It is stated in the briefs of opposing counsel, although the fact does not appear in the record of this case, that Hansen has returned to the State since the rendition of the decree from which is this appeal, and that he has sued Friedman for the balance which he alleges is due him under his contract. We cannot anticipate the result of this litigation. Hansen may not now, because of his failure to comply with the statute relating to materialmen's liens and their enforcement, have a lien declared in his favor; but, if the testimony warrants, he may recover judgment for any balance found to be due him. Certainly, Friedman should not be required to pay both Hansen and the Wyatt Company the balance, if any, which he may owe on account of the remodeling of his home. The decree of the court below appears to be correct, and it is, therefore, affirmed.