LONG-BELL LUMBER COMPANY *v.* AUXER.

4-9987                                                    255 S. W. 2d 163

Opinion delivered February 23, 1953.

*Rose, Meek, House, Barron & Nash,* for appellant.

*Fitzhugh & Cockrill, Talley & Owen* and *Wright, Harrison, Lindsey & Upton,* for appellee.

J. SEABORN HOLT, J. Appellant, Lumber Company, (plaintiff below) brought this suit to foreclose an alleged materialman's lien in the amount of $9,414.96 ($4,544.96 of this amount being for materials furnished and $4,870, cash furnished for labor to Auxer, the contractor), on property owned by Peter J. Heyburn and wife in Jacksonville, Arkansas.

The defendants below (appellees here), were in three groups, (1) Peter Heyburn and wife, (2) Joe

Auxer (who died October 14, 1950), his wife, Jessica, and a minor son, Bennie, and (3) Victor Howard, Trustee, Adams & Howard Company, Inc., and the Community Savings Bank of Rochester. All defendants answered with general denials and presented a common defense.

A trial resulted in a decree for the defendants and a dismissal of appellant's complaint.

In brief, the facts were to the following effect: Appellant, Long-Bell, a supplier of building materials, verbally contracted with Joe Auxer to furnish him both materials and money to pay labor in building a house which Auxer had contracted to build for the Heyburns. Materials were supplied by Long-Bell to Auxer on the Heyburn job between April 22, 1950, and July 8, 1950, in the amount of $4,544.96, and in addition Long-Bell advanced cash to Auxer in the amount of $4,870 for his labor used on the job.

It also appears that Long-Bell, between July 20, 1949, and April 29, 1950, had furnished Auxer on another construction job, known as the Elmore job, and entirely separate from the Heyburn job, materials and cash in the amount of $14,068.99, the last material being furnished on this Elmore job approximately seven days after the Heyburn job was begun.

It appears undisputed that on June 9, 1950, appellee, Heyburn, gave his check for $3,000 to Auxer on his contract with Auxer, and on the same day, Auxer gave his personal check to Long-Bell for $3,000 which Long-Bell, on its own motion applied, not on the Heyburn job, but on the Elmore job. On August 9, 1950, the Heyburns borrowed $9,450 from Adams & Howard Co., Inc., executing a note and a deed of trust as security with Victor Howard, Trustee. The note and deed of trust were later assigned to the Community Savings Bank of Rochester. The permanent financing of this loan was handled by appellee, Adams & Howard Co., Inc., and James Rhodes, manager of this company's Little Rock office, on August 9, 1950, disbursed the proceeds of the Heyburn loan by check for $9,450, payable to Mr. Hey-

burn, his wife, and Auxer, and on the following day, August 10, 1950, the evidence shows Auxer delivered his check for $3,191.64, out of these Heyburn funds, to Long-Bell, which was credited to the Elmore job. It thus appears that a total of $6,191.64, which was more than enough to pay for all materials furnished on the Heyburn job, was credited on the Elmore job out of money paid to Auxer by the Heyburns.

Appellant contends: (1) ''That it did not know that the money applied on the Elmore account was paid to Auxer by Heyburn, that by the exercise of reasonable diligence it could not have learned that fact, that Auxer made payment to appellant and directed application of payment to the Elmore job.'' The contention is also made: (2) ''With reference to the advances made by appellant to Auxer for the payment of labor, appellees contend that under the statute appellant is not entitled to a lien therefor. Appellant contends that it is entitled to a lien on the theory that the laborers paid from the advancements had the right, if not paid, to establish liens, and that plaintiff, in discharging the obligations to the laborers, is entitled to subrogation.''

— (1) —

Our rule is well settled that, in circumstances such as are presented here, if Long-Bell knew, or by the exercise of reasonable diligence, or care, should have known the source of the money which Auxer paid to it, then it was obligated to credit the Heyburn job therewith. We think the preponderance of the testimony shows that Long-Bell did know that the source of the Auxer payments in question was Heyburn money.

Burton Dougan, an officer of Beach Abstract & Guaranty Co. of Little Rock, and agent for a title insurance company, testified that his company issued on August 15, 1950, Mortgagee's Title Insurance policy in favor of Heyburn and Adams & Howard Co., Inc.; that in early October, 1950, he first heard of appellant's lien claim on Heyburn's home. He notified Rhodes and they, together with Auxer, went immediately and consulted

Mr. Ellis, manager of Long-Bell, at his office. Relative to this meeting, Mr. Rhodes testified: "Q. What was your purpose in contacting him? A. Mr. Auxer had told us that he had paid the Heyburn material bill in full and we went to Long-Bell . . . with the idea of talking to Mr. Ellis about the case. Q. Did Mr. Ellis at that time tell you what the status of the account was? A. He did; he told us there was a balance of a little over ninety-four hundred dollars. Q. Did you talk to him? I say did you—did you and Auxer talk to him about why the money from Dr. Heyburn was not applied on the Heyburn account? A. Yes, sir, we did. Q. What did he say about that? A. Mr. Ellis told us he knew the money came from the Heyburn job; since he was not specifically told by Mr. Auxer to apply it on the Heyburn job he applied it on the oldest account, which was the Elmore job."

On the same point, Mr. Dougan testified. "Q. Did you discuss with him the status of Auxer's account with Long-Bell Lumber Company? A. No, sir, we discussed with him the status of the Heyburn account. Q. That was Auxer's account with Long-Bell? A. That is right, excuse me. Q. Discussed the amount of the bill that was owned on what he was contending was the Auxer job? A. That is true. Q. During the conversation with Mr. Ellis, was anything said with reference to the source of the money that Auxer paid Long-Bell that was applied on what is known as the Elmore account? A. Yes, sir. Q. What statement did he make you with reference to his knowledge of the source of the money? A. Mr. Ellis—I asked him the specific question if he didn't know where that money came from and he said 'Yes, I knew it came from this last job but we applied it on the oldest account, the oldest account that this contractor owed'."

Mr. Ellis denied the testimony of Rhodes and Dougan.

Mr. Spotts, treasurer of Little Rock Abstract Company, (a competitor of Beach Abstract & Guaranty Company of which Dougan is an officer) in charge of the

Loan Closing and Title Department of his company, testified that he disbursed the loan made by his company on the Elmore job, to Elmore and Auxer, but that before the proceeds of this loan were paid to them on May 12, 1950, either Auxer or Elmore furnished him (as was the policy of his company) a written statement from Long-Bell to the effect that all materials on the Elmore job had been paid for in full. He further testified that several days later Mr. Ellis called him on the phone and after he told Ellis of the disbursement to Auxer and Elmore, on the strength of the above statement, Ellis said the statement "was in error" and that he "did not remember" having called Mr. Spotts.

We think the testimony of these witnesses was ample to show that Long-Bell did know that Heyburn money was being improperly applied in payment of the Elmore job and was sufficient to support the trial court's findings denying appellant's right to a lien on the Heyburn home for materials furnished.

### — (2) —

Appellant next contends that it should have a lien on the Heyburn job for money furnished Auxer for labor performed thereon. We do not agree.

On this issue, appellant frankly admits that under our present laws and numerous decisions of this court, beginning with *Bank of Commerce* v. *Lawrence County Bank,* 80 Ark. 197, 96 S. W. 749, and in many subsequent decisions, and as late as *Wyatt Lumber & Supply Company, Inc.* v. *Hansen,* 201 Ark. 534, 147 S. W. 2d 366, it would not be entitled to such lien for cash furnished a contractor for labor. However, we are urged to "re-examine the entire question and to depart from these cases, if necessary, to protect the materialman who does in fact advance its funds to pay labor on the job." This we decline to do. The relief sought appears to direct itself to the Legislature.

Affirmed.

GEORGE ROSE SMITH, J., not participating.