WELLS *v.* PLANTERS LUMBER Co.

5-1864                                              327 S. W. 2d 1

Opinion delivered May 11, 1959.

[Rehearing granted in part September 21, 1959]

*Owens, McHaney, Lofton & McHaney,* for appellant.

*H. B. Stubblefield,* for appellee.

SAM ROBINSON, Associate Justice. Appellee, Plant-ers Lumber Company, sold to Walter J. Wyma, a con-tractor, building material used in the construction of a house for appellants, William Hugh Wells and Hazel Louise Wells, his wife, who are hereinafter referred to as Wells. Wyma collected from Wells more than a suffi-cient sum to pay Planters in full for the material pur-

chased from that company for the Wells job. About the same time Wyma received the money from Wells, he paid Planters an amount sufficient to take care of the material used in the Wells job, but Wyma directed that such sums be credited to other accounts. As a result, the Wyma account with Planters on the Wells job went unpaid. Planters filed this suit to foreclose the materialman's lien. Wells defends on the theory that his money was used to pay other accounts owed to Planters by Wyma and that Planters knew, or should have known, that Wells' money was wrongfully used to pay such other accounts. The decree was in favor of Planters, and Wells has appealed.

We held in *Long Bell Lbr. Co.* v. *Auxer,* 221 Ark. 672, 255 S. W. 2d 163, that if the materialman knew or by the exercise of ordinary care should have known that a particular property owner furnished the money paid to the materialman by the contractor, it was the materialman's duty to apply the payment to the account of the property owner furnishing the money.

To determine whether Planters is barred by the principles of equity from enforcing the lien, the evidence must be closely analyzed. There is no controversy about the amount of the account, the giving of timely notice of intention to file the lien, and that suit was filed in due time. The only issue is whether in view of all the facts equity should enforce the lien. The contract price for constructing Wells' house was $32,500. The job was commenced about the 2nd of January, 1957. On January 15th Wells gave Wyma a check for $7,500, another check for the same amount on January 30th, and still another check for that amount on February 22nd, and later a check for $3,000. It is clear from the record that Wyma used $4,834.21 of the money that he received from Wells on January 15th to pay Planters on a job known as Lot 3, Block 2, which had been completed in October, 1956. He used $3,115.96 from the $7,500 received from Wells on February 22nd to pay Planters on the White Oak Lane job, which had been completed more than 80 days previously, the time in which the property owner could have been given valid notice of the intention to file a lien. A

total of $7,950.17 of Wells' money was credited to the payment of other accounts owed by Wyma to Planters. This sum is greater than Planters claims is now due on the Wells property. In other words, if Wells should receive credit for the two payments that were credited to other jobs, he would not be indebted to Planters in any amount.

In our opinion, by the exercise of reasonable care Planters should have known that Wells, whose property was subject to a lien that Planters might file, furnished the money that was used in paying off the account on the Lot 3, Block 2 job, and also the White Oak Lane job. In these circumstances it was the duty of Planters to apply to the Wells job the money furnished by him. Employees of Planters deny they knew that Wells was the source of the money used by Wyma to pay off the Lot 3, Block 2 job and the White Oak Lane job. But the circumstantial evidence is completely convincing that the employees of Planters in the exercise of due diligence should have known that Wells was the source of the money used in paying off the other two jobs. In the first place, Wyma was a regular customer of Planters; they had been doing business with him regularly for a long time. They knew, or should have known, that the Wells job was the only one of any consequence that Wyma had during the time the money was received that was used in paying off the other two jobs. These other two jobs had been completed for a considerable time, and although when an account had not been paid it was the invariable custom and practice for Planters to serve notice on the property owner within 80 days after the completion of a job, such notice was not served on the property owners of either the White Oak Lane job or the Lot 3, Block 2 job.

From the evidence it can be determined that the failure to give these notices was not an oversight; it was the result of some assurance that the account was going to be paid. We do not think there is any doubt but that Planters knew, or should have known, that the source of the money used in paying the other two jobs was Wells. Employees of Planters gave no satisfactory explanation

of the failure to file liens on the Lot 3, Block 2 job and the White Oak Lane job. The only reasonable explanation is that they knew they were going to get the money without the lien, and from all the evidence in this case they should have known that it was Wells' money that was going to be used. According to the evidence it would have been normal procedure for the people at Planters to talk to Wyma about it. Mr. Barnett, an employee of Planters, testified that he was sure he talked to Wyma about each one of the accounts.

Although the last purchase on the Lot 3, Block 2 job was October 23rd, nothing was paid to Planters on that job until January 17th, two days after Wells paid Wyma $7,500. It is perfectly clear, and completely convincing from the evidence, that Planters would not have let the time run out for giving the notice unless the company had been assured that the money would be paid. It does not appear that anyone gave that assurance except Wyma. It is not likely Planters would have felt assured by any promises from Wyma without knowledge of where he was going to get the money. The facts regarding Wyma's payment to Planters on the White Oak Lane job of money he received from Wells are practically identical with the facts relating to the Lot 3, Block 2 job.

Subsequent to the transactions heretofore mentioned, Wyma went into bankruptcy and Wells filed a claim for the full amount of the lien Planters had filed against the Wells property. It is suggested by Planters that such action on the part of Wells is an acknowledgment by Wells of the alleged debt to Planters and that Wells is bound thereby. We do not think the filing of the claim by Wells has that effect. It was merely an effort to protect himself, and he might have been guilty of negligence if he had failed to do so.

When all the facts in the case at bar are considered, the rule announced in the Long Bell case is applicable. Planters is not entitled to enforce the lien.

Reversed.

McFADDIN, J., dissents.

574

SAM ROBINSON, Associate Justice. On rehearing it has been called to our attention that on January 15th, when Wells paid Wyma, $7,500 and Wyma in turn paid Planters Lumber Company $4,834.21 which was credited on the Lot 3, Block 2 job, only $2,274.29 was owed to Planters on the Wells job. Of course, in these circumstances Planters could have applied to the Wells job only the amount of money owed thereon, $2,274.29. *Cooper* v. *Sparrow*, 222 Ark. 385, 259 S. W. 2d 496. In the original opinion Wells was given credit for the entire $4,834.21. Wells was, therefore, erroneously given credit for the difference between $2,274.29 and $4,834.21, which is $2,559.92. Wells should not have been given credit for this $2,559.92 and Planters is entitled to a lien for that amount. The petition for rehearing is granted to that extent.