COWARD *v.* BARNES.

5-2062                                                   334 S. W. 2d 894

Opinion delivered May 9, 1960.

*Douglas Bradley,* for appellant.

*E. D. McGowan,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal necessitates a study of the law relating to garnishments. C. C. Coward, appellant, recovered judgment against Pfeifer on September 2, 1958 for $821.03 and interest and costs. On September 30, 1958 Coward had a writ of garnishment served on appellee, Luther Barnes, ". . . to answer what goods, chattels, moneys, credits, and effects he may have in his hands or possession belonging to said defendant, Ralph Pfeifer, to satisfy

the judgment aforesaid''. On October 3, 1958 Barnes filed answer, stating that Pfeifer was then indebted to him, and that he (Barnes) had nothing in his hands then belonging to Pfeifer. On September 24, 1959 trial in the Circuit Court, without a jury, resulted in a judgment discharging[1] Barnes as garnishee; and from that judgment Coward prosecutes the present appeal.

At the outset it is well to mention that the factual findings of the Circuit Judge have the force and effect of a jury verdict. (*Pate* v. *Fears,* 223 Ark. 365, 265 S. W. 2d 954.) Barnes testified that Pfeifer was his sharecropper for 1958; that he furnished Pfeifer $817.40 in cash during the crop year; that half of the gross crop would go to Pfeifer, less — from Pfeifer's said half — all advances; that when the garnishment was served and answer made on October 3, 1958, only three bales of the 1958 crop had been gathered, and that no proceeds[2] had been determined because the remainder of the crop had not even been picked. One who cultivates land for a specified portion of the crop, the landlord furnishing the land, team, and tools, is not a tenant, but a laborer. *Gardenshire* v. *Smith,* 39 Ark. 280; *Hammond* v. *Creekmore,* 48 Ark. 264, 3 S. W. 180; *Douglas* v. *Lamb,* 157 Ark. 11, 247 S. W. 77; *Houck* v. *Birmingham,* 217 Ark.

[1] Our cases hold that unless the answer of the garnishee is denied by written pleadings, it is taken as conclusive. See *Kochtitzky & Johnson* v. *Malvern Gravel Co.,* 195 Ark. 84, 111 S. W. 2d 478, and cases there cited. The transcript before us does not contain a written pleading by Coward controverting the answer of Barnes; but we will not rest our opinion on that omission because it is not even mentioned or suggested in the appellee's brief, and such a pleading controverting the garnishment might have been filed and inadvertently omitted from the transcript, since the absence of such denial is not mentioned.

[2] It was shown — at the trial in September, 1959 — that the total 1958 cotton crop was thirty bales, which, after paying ginning, brought a gross sum of $5,392.59; and that one-half of what remained of this sum, after paying advances and expenses for which Pfeifer was liable, ultimately belonged to Pfeifer. The calculation appears to be as follows:

| | | |
|---|---|---|
| Sharecropper's ½ gross | | $2,696.29 |
| Less cash advances by Barnes to make the crop | $ 817.40 | |
| Less cost of fertilizer and poison | 340.76 | |
| Less advance for cotton picking | 1,223.36 | |
| Total charged against Pfeifer | | 2,381.46 |
| Net balance to Pfeifer from crop | | $ 314.83 |

449, 230 S. W. 2d 952. Barnes, being thus an employer of Pfeifer, was subject to garnishment proceedings under § 31-501 Ark. Stats., just as any other employer would be subject to garnishment proceedings; and our statute (§ 31-502) recognizes that wages may be garnisheed.

The question presented is, whether the undetermined amount due the sharecropper Pfeifer, was subject to garnishment on September 30, 1958 or on October 3, 1958 (*Harris* v. *Harris*, 201 Ark. 684, 146 S. W. 2d 539). Did Barnes have anything in his hands definitely belonging[3] to Pfeifer on either September 30, 1958 or October 3, 1958? Did it belong to Pfeifer at all events, or was any such amount entirely contingent? In *Wyatt Lbr. Co.* v. *Hansen*, 201 Ark. 534, 147 S. W. 2d 366, we had occasion to consider the matter of contingent obligations not subject to garnishment proceedings. In that case there had been a garnishment of the owner, Hansen, for whatever might be due by him to a building contractor, whose work had not been completed or finally accepted at the time of garnishment or answer. We held that any amount due to the contractor by the owner was entirely contingent[4] and, therefore, not subject to garnishment at the times involved in the case. Mr. Justice FRANK G. SMITH, speaking for a unanimous Court, said:

"Another reason why relief by way of garnishment may not be awarded the Wyatt Company is that the building contract was not fully completed. It is argued that there had been a substantial compliance with the original written building contract. But the court made a specific finding to the contrary; and we cannot

---

[3] This is really the point on which the learned Circuit Judge decided the case; for he stated, after argument of counsel: "I cannot find any evidence that Mr. Barnes tried to beat the creditor out of the debt. If I did, I wouldn't hesitate to hold him responsible for it. I think he, under advice of counsel, stated what the situation was on September 30th."

[4] To the same effect see 4 Am. Jur. p. 682, "Attachment and Garnishment" § 200; annotation in 2 A.L.R. 506, entitled: "Money due only on further performance of contract by debtor as subject to garnishment;" and annotation in 134 A.L.R. 853, entitled: "What amounts to a contingency within statute or rule permitting garnishment or similar process before an obligation is due or payable, if payment or delivery is not dependent upon a contingency".

say that this finding is contrary to the preponderance of the evidence. But, even so, by the terms of the written contract, additions thereto became a part thereof . . .

"There is an extended annotator's note to the case of *McKendall* v. *Patullo,* 52 R. I. 258, 160 Atl. 202, 82 A. L. R. 1111, and the annotator cites many cases in support of the following note: 'It is held that, in order that a garnishee may be charged, there must be an existing debt at the time of the service of the garnishment, and not a mere conditional or contingent liability. So, in the case of a construction contract, where the employer is not to become indebted to the contractor until performance in all particulars, .there is no indebtedness owing to the contractor which may be reached in a garnishment proceeding until the terms of the contract have been performed.'

"Here, as has been said, the contract price for the work was payable 'Upon the completion of the work.'

"In the case of *Medley* v. *American Radiator Co.,* 27 Tex. Civ. App. 384, 66 S. W. 86, it was said: 'In order for a fund or liability to be subject to garnishment, there must be no condition precedent, no impediment of any sort between the garnishee's liability and defendant's right to be paid . . .' "

Even though the 1958 cotton crop may have been matured at the time Barnes answered the garnishment, nevertheless the major portion of the cotton had not been picked, and it was Pfeifer's duty to pick this cotton and carry it to the gin. The cost of picking was a sizeable advance. The gin tickets were introduced in evidence, and twenty-three of them are dated after October 6, 1958. Who could have told on October 3, 1958 how many bales of cotton Pfeifer would make, when part of the cotton was still in the field ungathered? Who could have told the price to be received from the cotton? Barnes testified: "We always wait until we get through before we settle up". So on October 3, 1958, whether Barnes might owe Pfeifer any amount was entirely contingent on future events. We cannot view the results as they

were at the time of the trial in September 1959. The issue is, what was the situation on October 3, 1958? In the annotation in 2 A. L. R. 506, the holdings are summarized in this language:

"But where a further performance of a contract is necessary before money payable thereon becomes due, the payment is conditioned on the performance, and is not subject to garnishment until the condition has been fulfilled . . . The rule rests on the view that 'as a plaintiff can have no greater right against the garnishee than the defendant would have, and can occupy no better position with respect to the garnishee than the defendant could in a suit brought by him against the garnishee, it follows that, where a contract between the defendant and the garnishee had not been fully performed by defendant at the time of attachment by plaintiff, the garnishee is not chargeable'. *Johnson* v. *Healey* (1913), 35 R. I. 192."

We therefore conclude that the evidence is amply sufficient to support the finding and judgment of the Circuit Court to the effect that on September 30, 1958, as well as on October 3, 1958, any amount Barnes might ever owe Pfeifer was entirely too contingent to be subject to garnishment process.

Affirmed.